MARY NEWCOMB, GUARDIAN OF THOMAS NEWCOMB *v.* CASSIDY.

[No. 1267A106. Filed April 3, 1969. Rehearing denied May 16, 1969. Transfer denied July 23, 1969.]

*Johnson and Carroll, John L. Carroll, Edwin W. Johnson, Charles C. Griffith,* all of Evansville, and *Theodore Lockyear,* of Evansville, for appellant.

*Fine, Hatfield, Sparrenberger & Fine, Joe S. Hatfield,* both of Evansville, for appellee.

SHARP, J.—During the pendency of this appeal the Appellee filed a Motion to Dismiss the appeal or in the alternative to affirm the judgment below. In this Motion the Appellee contends this appeal should be dismissed because no Motion for New Trial was filed by the Appellant in the court below. The Assignment of Errors was filed in a timely manner, the Summary Judgment being granted on September 7, 1967, and the Assignment of Errors being filed December 6, 1967. Immediately following the effective date of the Indiana Summary Judgment statute there was some question regarding the necessity of filing a Motion for a New Trial after Summary Judgment is granted. Effective April 22, 1968, the Supreme Court of Indiana amended Rule 2-6 to the effect "a motion for a new trial shall not be appropriate for raising error claimed by reason of the entering of a summary judgment. The sustaining of a motion for a summary judgment and the granting of the same may be assigned and specified separately in the assignment of errors for consideration on appeal." Obviously, the Appellant has done precisely what is contemplated in the above quoted rule. The only remaining question is whether a Motion for a New Trial was necessary under these circumstances before the effective date of the amendment of Rule 2-6. We hold that clearly a motion for new trial was not necessary to perfect the appeal in this case. In *Personnett v. Great Atlantic and Pacific Tea Co.,* 142 Ind. App. 698, 237 N. E. 2d 281 (1968), this court decided that an appeal was properly before this court under precisely these same circumstances. Therefore, the Appellee's Motion to Dismiss Appeal or in the alternative to affirm judgment is hereby overruled.

We are here again called upon to decide the propriety of granting a summary judgment for the Defendant-Appellee under § 2-2524, Burns' Indiana Statutes Annotated, Acts 1905, ch. 90, § 1. For a recent statement by this court regarding Summary Judgment see *Mayhew et al. v. Deister et al.*, 144 Ind. App. 111, 244 N. E. 2d 448, (1969), and the cases and authorities cited therein.

This instant case grew out of an automobile accident which occurred May 25, 1963, in Evansville, Indiana, in which the Plaintiff-Appellant's ward sustained personal injuries. The Plaintiff-Appellant filed suit in the Superior Court of Vanderburgh County charging the driver of the car in which the Plaintiff's ward was riding, namely, Gerard Browne, and the driver of the other car, namely, Defendant-Appellee, Andrew Cassidy, with negligence as follows:

"6. At the stated time, the defendant, Andrew Cassidy, was operating an automobile west on Washington Avenue and from a stopped position at a point in front of the premises located at 4600 Washington Avenue, rapidly increased the speed of such automobile to the point that immediately prior to the accident hereinafter described, the defendant, Andrew Cassidy, was operating said automobile at a rate of speed in excess of 75 m.p.h.

"7. At the same time and place, the defendant, Gerard Browne, was operating his automobile, in which plaintiff's ward was riding as a passenger, to the rear of the automobile being operated by the defendant, Andrew Cassidy, and the defendant, Gerard Browne, rapidly accelerated his vehicle from a stopped position in front of the premises at 4600 Washington Avenue to the point that immediately prior to the accident hereinafter described, the defendant, Gerard Browne, was operating said automobile at a rate of speed in excess of 75 m.p.h. The defendant Gerard Browne approached the rear of the automobile being operated by defendant Andrew Cassidy and then suddenly and without warning lost control of his automobile causing same to crash against a telephone pole located on the South side of Washington Avenue sheering in two the automobile in which plaintiff's ward was a passenger and causing the injury to the plaintiff's ward as hereinafter set forth.

"8. The injury and damage to the plaintiff's ward as hereinafter set forth was caused through the negligence and careless [sic] of the defendant, Andrew Cassidy in the following particulars, each of which was a proximate cause of plaintiff's ward's injury and damage:

(a) In reducing the speed of his automobile when he knew, or in the exercise of reasonably case and caution should have known, that the automobile in which plaintiff's ward was a passenger was directly behind his automobile traveling at a rate of speed in excess of 75 m.p.h. so that defendant Gerard Browne had to swerve to the left to avoid colliding with the rear of defendant Andrew Cassidy's vehicle.

(b) In unnecessarily rapidly accelerating his automobile from in front of the premises at 4600 Washington Avenue and starting out in front of the automobile being driven as aforesaid by the defendant Gerard Browne and by his actions thereby inviting said defendant Gerard Browne to follow in pursuit so that the two automobiles raced west on said Washington Avenue at speeds in excess of 75 m.p.h.

"9. The injury and damage to the plaintiff's ward as hereinafter set forth was caused by the wanton misconduct of defendant, Gerard Browne, in the following particulars, each of which was a proximate cause of plaintiff's ward's injury and damage:

(a) In operating said motor vehicle at a speed in excess of 75 m.p.h., a speed so excessive for the condition then and there existing that the danger of injury to the plaintiff's ward was probable.

(b) In unnecessarily rapidly accelerating said motor vehicle from in front of the premises at 4600 Washington Avenue and following in pursuit of the automobile being driven by defendant Andrew Cassidy, and by his actions racing and inviting the defendant Andrew Cassidy to engage in a race so that the two automobiles raced west on said Washington Avenue at speeds in excess of 75 m.p.h.

(c) In operating his automobile in a condition of intoxication, well knowing that he was intoxicated, and with a conscious disregard to the safety of the plaintiff's ward herein.

(d) With a conscious indifference to the consequences, defendant Gerard Browne lost control of his said vehicle

while attempting to pass the defendant Andrew Cassidy's vehicle at a high and dangerous rate of speed, to-wit, in excess of 75 m.p.h. on a street that was slick in a residential area while under the influence of intoxicating beverages."

A demand for jury trial was timely filed.

The Defendant-Appellee, Andrew Cassidy, filed answer in admission and denial. The Defendant-Appellee also filed a Motion for Summary Judgment as follows:

"The defendant, Andrew Cassidy, moves the Court, pursuant to Burns' Indiana Statutes, Sec. 22-2524, to enter judgment for the defendant, Andrew Cassidy, upon the ground that there is no genuine issue as to any material fact in this action as to said defendant and that said defendant is entitled to judgment as a matter of law as appears from the depositions under oath of the parties to this action and other witnesses filed in this cause, namely, the depositions under oath of Wilburn Newcomb, Thomas Newcomb, Gerard Browne, Andrew Cassidy, Donald R. Conyer and Marsha Kay Schuble."

A similar Motion for Summary Judgment in favor of the Defendant, Gerard Browne, was overruled by the trial court.

The parties took extensive depositions, all of which were before the trial court when it granted Summary Judgment. These same depositions are before this court and have been examined carefully in the determination of this case. The evidence reflected in each deposition is summarized with all inferences in favor of the Appellant, the party against whom summary judgment was sought. All five of these depositions were placed before the court by the Appellee in support of his Motion for Summary Judgment.

The Appellee, Andrew Cassidy, was 19 years old and had not graduated from high school. On the night of the accident, May 25, 1963, he was driving a 1963 Monza. He had been involved in a series of Juvenile Court proceedings in which his misconduct was in question. The 1963 Monza was in good physical condition. On the night in question Cassidy was

given a speeding ticket, which ticket resulted from the investigation of the accident in this case. He entered a plea of not guilty which was later changed to guilty by an attorney after Cassidy entered the Air Force. He had known the Defendant, Gerard (Jerry) Browne, since September, 1962. After school on May 24, 1963, he may have gone to Arc Lanes and there saw Jerry Brown and Thomas Newcomb, plaintiff's ward. These three, Cassidy, Newcomb and Browne, had, on May 24, 1963, made plans to go on the river on Saturday morning, May 25, 1963. He had a date in early evening of May 25 and left his date about midnight. He does not remember where he and his date went; it could have been the Surf Club, a drive-in movie or possibly a carnival. After taking his date home, he drove the 1963 Monza to Arc Lanes and played pool. Later Cassidy saw one Don Conyer who suggested that they go over to Jerry Browne's house. Cassidy had known Conyer since September 1962. Brown, Cassidy and Conyer were all students at Harrison High School. As Conyer and Cassidy left Arc Lanes they met Brown and Newcomb. Jerry Browne had a 1961 Monza and Newcomb had a Volkswagen truck. Both Monzas had "4 on the floor" and the engine in the rear. It was agreed that Cassidy and Conyer would go to Browne's house so Browne could take his car home and Newcomb could take his truck home. Conyer rode with Cassidy. They all left Arc Lanes parking lot at about the same time and went first to Newcomb's house where he left his truck. Newcomb's house was on Washington Avenue across the street from the ABC Discount Store. Cassidy waited in his car in front of ABC while Newcomb got in Browne's car. It had been raining and was damp and there were patches of water on the street. Browne had pulled his car in the driveway of the Newcomb residence while Cassidy waited across Washington Avenue in front of ABC. There was little traffic on Washington Avenue. Cassidy admits it is possible he "laid down rubber" when he left the ABC. As he pulled away, the Browne car was behind him but he did not, at first, keep the Browne car in his rear view mirror.

It was about one-half mile from the ABC-Newcomb residence to the point on Washington Avenue where the accident occurred. Cassidy admits that during that one-half mile space he exceeded the 30 m.p.h. speed limit. Conyer was sitting in the front seat of the Cassidy car and told him to slow down. Cassidy admitted going up to 50 m.p.h. in that one-half mile stretch where a hospital, church, and an old folks home were located. Cassidy shifted gears to slow down but did not apply his brakes. His brake lights did not come on. As Cassidy slowed down Browne came up from behind and started to pass him. The Browne car was in the same lane as the Cassidy car when it started to pass. The Browne car changed lanes about one-half block before the accident. As the Browne car started to pass, Browne lost control, swerved and hit a telephone pole in front of the hospital. At the time of the accident Cassidy says he was going 30 m.p.h. and Browne 15 to 20 m.p.h. faster. In the one-half mile stretch between ABC and the point of the accident, Conyer had twice said "Slow up, we're in no big hurry." At the time Browne hit the telephone pole the Cassidy car was about even with it. The impact broke the Browne car in half. Newcomb was thrown out in front of the Browne car and was rendered unconscious. Cassidy further testified as he first pulled away from the ABC he had been traveling 40 to 50 m.p.h.

The deposition of Wilburn Newcomb, father of Thomas Newcomb, was taken on April 21, 1964. He had no personal knowledge of how the accident occurred. At the present time, about one year after the accident, his son is semi-conscious and has gradually improved. His son can talk but is hard to understand. Newcomb testified his son has no recollection of the accident. His body is paralyzed except his left arm which he does not have the full use of. He sustained a skull fracture and an injury to the brain stem. Wilburn Newcomb stated he talked to Cassidy on the phone once about the accident and Cassidy said he did not know how fast he was driving at the time of the accident. Thomas Newcomb was going

to stay all night with Jerry Browne on the night of the accident.

Gerard (Jerry) L. Browne, Jr., was 19 at the time of the accident. Much of his testimony was repetitious and cumulative with that of Cassidy. Browne was given a ticket for reckless driving at the time of the accident and had a previous drinking violation. His auto was a 1960 or 1961 Monza hardtop 2-door sedan in good condition. Browne, Conyer and Newcomb spent the early evening of May 24, 1963, together driving around. They got a boat but did not go to the river because it was raining. They got a case of beer and put it in Newcomb's truck and went to Browne's house where they watched television and put a few of the beers, which were warm, in the ice box and ordered pizzas. Browne drank about half of one beer. There was no beer in either vehicle at the time of the accident. At the time the two cars left Arc Lanes Cassidy started off from ABC pretty fast. When he started Cassidy was a block and a half ahead of him. Browne was rendered unconscious in the accident. He had driven his Monza 60 m.p.h. He knew nothing Tom Newcomb had done to cause the accident. He had nothing to drink except the one-half bottle of beer that evening. He seems to remember some conversation with Newcomb just before the accident about the speed of the Cassidy car.

Donald R. Conyer was about age 18 on the date of the accident. Much of his testimony is repetitious and cumulative of Browne's and Cassidy's. He was riding in the Cassidy car at the time of the accident and knew the Browne car was gradually attempting to pass. At the time the Browne car was attempting to pass, the Cassidy car maintained its speed. He denies the cars were racing. Conyer had two beers at Browne's house. He observed the Browne car coming from behind but he could not judge its speed.

Conyer further testified that the Cassidy car did not decrease its speed and there was no braking motion. At one

time while traveling on Washington Avenue just before the accident Cassidy was going 40 to 45 m.p.h. Cassidy slowed down to 30 to 35 m.p.h. at the point of the accident. When the Cassidy car reduced speed the Browne car was coming upon them from the rear. At the time of the accident the Browne car was going faster than the Cassidy car. Conyer told Cassidy to slow down near the nursing home because he felt Cassidy was driving too fast. The surface of the road was moist and slick. Conyer was seated in the right hand seat facing to the side so he could see the Browne car come upon them and he was watching the Browne car at all times.

Conyer further testified near the nursing home he made a remark that Cassidy was driving too fast for the conditions and that they were in no hurry. When Cassidy slowed down Browne was not over six or seven car lengths behind. The Cassidy car started out from the ABC approximately 300 feet ahead of the Browne car.

Thomas Newcomb's deposition was taken by the Appellee on July 23, 1966, (more than three years after the accident and more than two years after his father's deposition). He recalled the accident, remembered riding in a compact car driven by Jerry Browne. He remembered the accident occurred in May, 1963. He remembered he was going to Jerry Browne's house. The weather was cool. He testified that Browne was drunk and he, Newcomb, had been drinking. He knew Cassidy and Conyer had been drinking beer. The Browne car was crushed when it hit a telephone pole. Newcomb testified that the Browne car was going 60 to 80 m.p.h. He advised Jerry Browne to slow down. He remembered the Browne automobile as a white Corvair. He remembered being at Arc Lanes on the night of the accident. He remembered Jerry Browne getting the beer and putting it in the freezer. He stated the Cassidy car swerved in front of the hospital. He stated Jerry Browne was racing.

The deposition of Marsha Kay Schuble, girl friend of An-

drew Cassidy was taken. She confirmed Cassidy's testimony as to their date on the evening of May 24, 1963.

On the basis of the foregoing facts, the case of the Plaintiff-Appellant was predicated against Browne under the guest act and against Cassidy upon the theory that Cassidy was jointly engaged in a speed contest with Browne.

Are the allegations of the Plaintiff's complaint together with the depositions considered most favorable to Appellant, the party against whom summary judgment was sought, sufficient to manifest a genuine issue as to a material fact in the case against Cassidy, Appellee here? We must consider all evidence, and in so doing direct our attention to evidentiary inferences most favorable to the non-moving party to determine if any issue of fact exists. We believe that such an issue does exist.

The racing of motor vehicles on a public highway is negligence and the drivers who engage in speed contests are each liable for injuries to third persons regardless of which of the racing vehicles actually inflicted the injury and even though there is no contact between the racing vehicles. Blashfield Automobile Law and Practice, Vol. 2, Sec. 102.37, p. 225; *Nelson v. Nason*, 343 Mass. 220, 177 N.E. 2d 887 (1961), and extensive authorities cited therein. See also, *Lee Brothers v. Jones*, 114 Ind. App. 688, 54 N. E. 2d 108 (1944).

In *Lemons v. Kelly*, 239 Ore. 354, 358, 397 P. 2d 784, 786 (1964), the Oregon Supreme Court stated:

". . . it was the state of mind of the defendants in those seconds of time between the passing and the accident that was crucial; not necessarily what plaintiff may have thought it to be. Both defendants denied any racing. However, for the purpose of ruling on the motion for directed verdict, we must accept as true the evidence that racing occurred. . . ."

· · · · ·

"It was also for the jury to decide if the racing was the cause of the accident. For even if the race had terminated some seconds before it would still be for the jury to decide if there were a casual connection between the racing and the accident."

. . . . .

"One who does participate in setting in motion such hazardous conduct cannot thereafter turn his liability off like a light switch. From the authorities cited we conclude that *one who participates in setting such hazardous conduct in motion cannot later be heard to say: 'Oh! I withdrew before harm resulted even though no one else was aware of my withdrawal.' It would be a reasonable probability that the excitement and stimulus created by this race of several miles had not dissipated nor, in fact, terminated at all, in the fraction of a minute in time between the act of passing and the accident.* The state of mind of the participants was material. We cannot guage the state of mind to the point of saying that the stimulus or intent had ended. The evidence warrants a finding that it did continue. *It would be for the jury to decide if the racing were the cause of the accident.*" (Emphasis added.)

The common law regarding speed contests, as reflected in the above authorities, is codified in Acts 1963, ch. 3, § 1, Burns' Indiana Statutes Annotated, § 47-2319.

From the evidence most favorable to the Appellant and the most favorable inferences therefrom, together with the physical facts and circumstances, reasonable men could find that the race began when the Appellee, Cassidy, started off at a high rate of speed. Such conduct as unnecessary rapid acceleration could constitute an invitation for Browne to follow in hot pursuit and to race, resulting in a speed contest. A jury could believe the testimony of Conyer that the speed of the two vehicles was not considerably different. There is also evidence that the Browne car was going up to 80 m.p.h. which would necessarily imply that both were going at that rate.

It is not the providence of the trial court to weigh evidence or determine credibility of witnesses upon a Motion for Sum-

mary Judgment. It is the providence of the trial court to determine whether there exists a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. The burden is clearly on the moving party in this regard. The trial court *cannot* try issues of fact in determining a Motion for Summary Judgment. The party opposing Summary Judgment is entitled to the most favorable inferences and the benefit of every doubt.

The United States Court of Appeals for the 7th Circuit has recently upheld these very same principles. See *Moutoux v. Gulling Auto Electric, Inc.,* 295 F. 2d 573 (7th Cir. 1961); *Progress Development Corp. v. Mitchell,* 286 F. 2d 222 (7th Cir. 1961); *Zahora v. Harnischfeger Corporation,* 404 F. 2d 172 (7th Cir. 1968); *Greenebaum Mortgage Co. v. Town and Garden Associates,* 385 F. 2d 347 (7th Cir. 1967); *Carter v. Williams,* 361 F. 2d 189 (7th Cir. 1966).

The two principal treatises on Federal Practice and Procedure both state that tort-negligence actions are not generally susceptible of being decided on Summary Judgment. See Moore's Federal Practice, 2d ed., Vol. 6, Sec. 56.17 (42) at page 2583 and Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, Sec. 1232, p. 106. The latter states:

> "Summary judgment will not usually be as feasible in negligence cases where the standard of the reasonable man must be applied to conflicting testimony, as in other kinds of litigation . . . .

> "Summary judgment has been properly granted on motion by a defendant in negligence cases where it *conclusively appeared* that plaintiff was barred by law from recovery." (Our emphasis.)

In this instant case it does not appear conclusively as a matter of law that the plaintiff is barred from recovery.

Since our statute, Burns' Indiana Statutes Annotated, Section 2-2524, is identical to rule 56 of the Federal Rules of Civil Procedure, these federal authorities are relevant.

On the basis of these principles there was clearly presented to the trial court a genuine issue as to a material fact, i.e., whether there was a race or speed contest. Therefore, the judgment of the trial court in granting Summary Judgment must be reversed and the case remanded for further proceedings consistent with this opinion.

Reversed. Costs v. Appellee.

Pfaff, C. J., Hoffman and White, J.J., concur.

NOTE.—Reported in 245 N. E. 2d 846.