[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
On February 16, 1994, the plaintiff, Deborah M. Riggott, Administratrix, filed an eight-count amended complaint against the defendants, Donald and Janet A. Bartlett (the "Bartletts"), Robert T. and David M. Adams (the "Adams"), Terri L. Hensel, and Richard B. Nadeau, seeking damages arising from an alleged motor vehicle race between two drivers that resulted in the death of the decedent after he lost control of his motor vehicle and it crashed.
The amended complaint alleges the following relevant facts. On the morning of January 4, 1992, the Bartletts, doing business as Brookside Package Store, and the Adams, doing business as Adams Den Restaurant, sold alcoholic beverages to the defendant Nadeau and Martin Mullins, notwithstanding the fact that Nadeau and Mullins were visibly intoxicated. Thereafter, Nadeau, Mullins, and the plaintiff's decedent decided to leave the Adams Den Restaurant and drive to another unspecified location. Mullins entrusted his automobile to the plaintiff's CT Page 13751 decedent, who admittedly was intoxicated and unfit to operate a motor vehicle. Nadeau, also allegedly intoxicated and unfit to drive an automobile, left in his own automobile. Thereafter, plaintiff's decedent and Nadeau proceeded to drive while intoxicated in a southerly direction on Route 5 in South Windsor, Connecticut. While driving along Route 5, Nadeau began racing with the plaintiff's decedent and jockeying for position, thereby inciting and encouraging the plaintiff's decedent to engage in a race and operate his motor vehicle at excessive rates of speed. During the race, the plaintiff's decedent lost control of his vehicle, which slid sideways on the wet pavement, jumped a curb, and smashed broadside into two utility poles alongside the highway, causing the plaintiff's decedent to be ejected from the automobile, suffer massive injuries and causing his death.
The sixth, seventh, and eighth counts of the amended complaint are directed at Nadeau and allege that Nadeau: (1) violated Connecticut General Statutes Section 14-218a
by operating his motor vehicle at a rate of speed that was greater than reasonable; (2) failed to maintain reasonable and proper control of his motor vehicle; (3) violated Connecticut General Statutes Section 14-227(a) by operating his motor vehicle while intoxicated; (4) violated Connecticut General Statutes Section 14-227(b) by operating his motor vehicle while impaired by alcohol; (5) violated Connecticut General Statutes Section 14-224
(c) by engaging in a motor vehicle race; and (6) incited and encouraged the plaintiff's decedent to engage in a motor vehicle race. In the sixth count the plaintiff alleges that said conduct was negligent and caused the death of the plaintiff's decedent. The seventh count alleges that said conduct was reckless and caused the death of the plaintiff's decedent. In the eighth count, the plaintiff seeks double or treble damages, claiming that said conduct was reckless and caused the death of the plaintiff's decedent.
 I.
On May 3, 1995, Nadeau filed a motion for summary judgment attacking the legal sufficiency of the sixth, seventh, and eighth counts. While a motion to strike CT Page 13752 would have been preferable the issue of whether the plaintiff's complaint alleges a recognizable cause of action may be considered in this motion for summary judgment. Brill v. Ulrey, 159 Conn. 371, 374, (1970). By necessity, this court reviews this claim as though raised on a motion to strike, and the allegations of the sixth, seventh, and eighth counts of the amended complaint must be taken as true. Zeller v. Consolini,235 Conn. 417, 419, (1995). Moreover, "the court is limited to the facts alleged in the complaint which must be construed most favorably to the plaintiff." Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170, (1988).
 II.
This case presents the question whether one who is injured or killed while participating in an automobile race on a public highway has a cause of action against the other racer for inciting him into the race. This question appears to be one of first impression in Connecticut.
In Carney v. DeWees, 136 Conn. 256, (1949), our Supreme Court held that the participants in a motor vehicle race were each liable for the injuries to innocent third persons caused by the race. That case, like the present one, involved a race without prearrangement and where the accident occurred with no contact between the cars. In so holding, the court stated that all participants are subject to liability based upon the principles set forth in Section 876 of the Restatement of Torts, which states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."
While Carney did not involve an action by one racer against another the court suggests that an individual CT Page 13753 injured while engaged in a motor vehicle race could not state a viable cause of action against another participant in the race. In Carney, the plaintiffs were passengers in the bed of a dump truck involved in a motor vehicle race with the defendants. The dump truck turned over while engaged in the race and the plaintiffs sustained injuries. Addressing the defendants' claim that the plaintiffs were participants in the race and thus barred from recovery as joint venturers, the supreme court stated that "[f]rom the time the truck started until it turned over, none of the plaintiffs did anything which affected the conduct of the operator of either vehicle, and none of them apprehended the danger which was to ensue from that conduct or could have done anything effective to prevent it if he had." Id. p. 260.
Several other jurisdictions have concluded that an individual engaged in a motor vehicle race does so at his own peril. In Parrott v. Garcia, 428 S.W.2d 476, 478
(Tex.Civ.App. 1968), the Texas appellate court stated: "Under the laws of other states, neither speeder is liable for the injuries sustained by the other. . . . Our streets and highways were not made nor designed, or maintained, as places for racing automobiles, and those who use them for such purposes do so at their own peril."
Other state decisions are in accord. SeeBierczynski v. Rogers, 239 A.2d 218, 221 (Del. 1968) ("It is also generally held that all who engage in a race on the highway do so at their peril, and are liable for injury or damage sustained by a third person as a result thereof. . . . We . . . hold that, as a general rule, participation in a motor vehicle race on a public highway is an act of concurrent negligence imposing liability on each participant for any injury to a non-participant resulting from the race."); Lemons v. Kelly, 397 P.2d 784,787 (Ore. 1964) ("It is said in all of the authorities cited that racing on a highway is hazardous to all other persons upon the highway and that the actor participates at his peril."); Boykin v. Bennett,118 S.E.2d 12, 17 (N.C. 1961) ("Those who participate are on a joint venture and are encouraging and inciting each other. . . . if damage to one not involved in the race proximately results from it, all participants are liable . . . Of course, if the injured passenger had knowledge CT Page 13754 of the race and acquiesced in it, he cannot recover.");McMicken v. Province, 90 S.E.2d 349, 59 A.L.R.2d 470 (W.Va. 1955) (evidence that plaintiff and defendant were racing established contributory negligence as a matter of law); Newcomb v. Cassidy, 245 N.E.2d 846, 851 (Ind.App. 1969) ("The racing of motor vehicles on a public highway is negligence and the drivers who engage in speed contests are each liable for injuries to third persons regardless of which of the racing vehicles actually inflicted the injury and even though there is no contact between the racing vehicles."); and, Myrick v. Sievers,121 S.E.2d 185, 188 (Ga.Ct.App. 1961) ("We agree that if the plaintiff here had been engaged in a `drag race' with the driver of the defendant's vehicle, the plaintiff himself, having voluntarily become so engaged, would have assumed the risk involved, and if injured while the vehicles were so engaged, he would have no cause of action against anybody.").
 III.
In the present case, the plaintiff argues thatCarney and the decisions of the other jurisdictions provide little guidance because they were decided when contributory negligence and assumption of risk were defenses that if proven barred a plaintiff's recovery. The plaintiff argues that since it was determined in those cases that racing was negligent as a matter of law, the courts necessarily concluded that an individual engaged in racing did so at his own peril. The plaintiff argues that such a conclusion is no longer mandated since Connecticut adopted the doctrine of comparative negligence, codified at Connecticut General Statutes §52-572h, which abolished the doctrine of assumption of risk and establishes a system where the jury determines the percentage of negligence attributable to each party in negligence cases. The plaintiff maintains that whether the defendant owed a duty to the plaintiff is a question of law, and in Connecticut, the test to determine if the defendant owed a duty to the plaintiff is whether a reasonably prudent person under the existing circumstances should have foreseen that the harm of the general type suffered was likely to occur. The plaintiff asserts that "a reasonably prudent person in this Defendant's position should have foreseen the harm that CT Page 13755 was likely to occur in the circumstances of this case, which include defendant's alleged knowledge of the decedent's intoxication, and he is entitled to a jury determination as to whether the negligence of the plaintiff's decedent was less than or equal to the negligence of the defendants.
It is true that "[t]he existence of a duty is a question of law and `[o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand.' Petriello v. Kalman, 215 Conn. 377, 382-83, (1990)." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381,384-85, (1994). Furthermore, it is also true that the foreseeability of the harm is an essential step in the test to determine whether a duty exists. "Although it has been said that `no universal test for [duty] ever has been formulated'; W. Prosser W. Keeton, [Torts, (5th Ed. 1984)], § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." Id., p. 385. "The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary person in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Id.
This court, however, cannot agree with the plaintiff's claim in this case that just because the harm was foreseeable, a duty exists, and the jury should determine the extent of the negligence attributable to the defendants and the plaintiff's decedent under the circumstances of the case. A simple conclusion that the harm to the plaintiff was foreseeable cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally "foreseeable," yet for pragmatic reasons, no recovery is allowed. See Maloneyv. Conroy, 208 Conn. 392, 400-01, (1988); Morin v. BellCourt Condominium Assn., Inc., 223 Conn. 323, 328 (1992); Prosser and Keeton on Torts, § 58 (5th ed. 1984). CT Page 13756
Once it is determined that the harm was foreseeable, the better view would seem to be that further inquiry must be made, because duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. W. Prosser W. Keeton, supra, § 53, p. 358. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." Maloney v. Conroy, supra, 401-02. "The final step in the duty inquiry, then, is to make a determination of `the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results.' W. Prosser W. Keeton, supra, § 43, p. 281." RK Constructors, Inc. v. Fusco Corp.,
supra, 231 Conn. 386.
In the present case, the court concludes that absent extraordinary circumstances or relationships one racer is not responsible for the safety of another racer, especially in a situation of no contact or physical proximity. Individuals legitimately using our highways often cannot avoid the grave dangers created by racing motor vehicles, but an individual invited to engage in racing, however, can avoid the dangers by simply declining to race, as required by Connecticut law. Connecticut General Statutes § 14-224(c) states: "No person shall operate a motor vehicle upon any public highway for a wager or for any race or for the purpose of making a speed record." The legislature has also expressly recognized that racing is hazardous even when engaged in by professional drivers under ideal circumstances and conditions. See Connecticut General Statutes § 14-164a(a).
 IV.
The plaintiff argues that the defendant was negligent because he incited the plaintiff's decedent to engage in a race when he knew or should have known that the plaintiff's decedent was intoxicated. This court CT Page 13757 recognizes that a duty may arise to refrain from encouraging a person to engage in dangerous conduct, if the actor knows or "has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreasonable things.
The sixth, seventh, and eighth counts of the plaintiff's amended complaint, however, fail to allege that the defendant knew or should have known that the plaintiff's decedent was intoxicated. "The right of a plaintiff to recover is limited to the allegations of his complaint." Boucher Agency, Inc. v. Zimmer, supra,160 Conn. 410.
Moreover, a reading of the entire amended complaint in this case reveals allegations that the defendant, as well as the plaintiff's decedent, was intoxicated and unfit to drive a motor vehicle. "It is uniformly held that voluntary or negligent intoxication cannot serve as an excuse for acts done in that condition which would otherwise be negligent. One who so becomes intoxicated is held thereafter to the same standard as if he were a sober person. One good reason is that an excuse based on such intoxication would be far too common and too easy to assert; in it ought to be held to the consequences." W. Prosser W. Keeton, supra, § 32, p. 178. Therefore, an intoxicated individual is held accountable for his conduct when intoxicated, however unreasonable the conduct may seem when he sobers up, and despite any argument that he would not have engaged in such conduct if sober. This court cannot countenance a cause of action by one intoxicated person against another intoxicated person, claiming that the latter should have foreseen the danger that the former could not because of his intoxication. Thus, even if the amended complaint had alleged that the intoxicated defendant knew or should have known that the plaintiff's decedent was intoxicated, such facts are not the kind of extraordinary circumstances that would take this case out of the general rule here adopted.
 V.
Finally, to permit a cause of action by one racer against another based upon the theory that the latter CT Page 13758 incited or encouraged the former to engage in such conduct, is tantamount to this court endorsing a doctrine that it is more wrongful to challenge another to a race, than it is to accept the challenge to the race. Racing, by its nature, requires two participants and the act of racing against another, by its nature, stimulates and excites the other to participate. Newcomb v. Cassidy,
supra, 245 N.E.2d 852. Those who engage in racing "are on a joint venture and are encouraging and inciting each other." Singleton v. Hughes, 130 S.E.2d 747, 749 (S.C. 1965), quoting Boykin v. Bennett, supra, 118 S.E.2d 17. Therefore, because this court cannot find a recognizable cause of action by this plaintiff against the defendant Nadeau, even if all the facts alleged were resolved in favor of the plaintiff, defendant's motion for summary judgment is granted.
Wagner, J.