Emery L. **PARKS** et al., Plaintiffs-Appellants,

v.

**FEDERAL CROP INSURANCE CORPORATION**, Defendant-Appellee.

No. 17321.

United States Court of Appeals Seventh Circuit.

Sept. 24, 1969.

Alan H. Lobley, Indianapolis, Ind., for plaintiffs-appellants; Ice, Miller, Donadio & Ryan, Indianapolis, Ind., of counsel.

Alan S. Rosenthal, Judith S. Seplowitz, U. S. Dept. of Justice, Washington, D. C., William D. Ruckelshaus, Asst. Atty. Gen., K. Edwin Applegate, U. S. Atty., Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before CASTLE, Chief Judge, SWYGERT, Circuit Judge, and GRANT, District Judge.

CASTLE, Chief Judge.

Plaintiffs are six Indiana farmers to whom defendant, Federal Crop Insurance Corporation (FCIC), issued substantially identical insurance policies covering their corn crops for the 1965 crop year. The crops in question suffered losses due to drought and plaintiffs sought to recover on the policies. FCIC denied coverage, refunded the premiums, and plaintiffs instituted this suit in the district court under 7 U.S.C. §§ 1506(d) and 1508(c). After the complaint and answer were filed, both par-

ties moved for summary judgment and filed briefs in support thereof. The district court granted defendant's motion on the ground that the insurance was void due to material misrepresentations of fact made by plaintiffs in reporting their respective interests in the insured crops to FCIC. This appeal followed.

The controversy involves plaintiff's individual, identical contracts with the DeKalb Agricultural Association, under which the Association, "desirous of engaging the land and services of the grower to raise corn suitable for feed," agreed to furnish: parent hybrid seed corn to be planted on plaintiffs' farms; a man to supervise the planting of the seed; and labor for detasseling the resulting "female" corn plants to prevent self-pollination.[1] The Association also agreed to compensate the grower at the rate of $100 per acre plus a premium of $1.25 per bushel for each bushel of seed corn produced on the female acres in excess of 20 bushels per acre.

In return, the grower agreed to satisfactorily plant and harvest the crop, and not to allow any person to acquire or obtain "even as much as one kernel" of the seed corn. The contract provided that the seed furnished and the seed corn raised therefrom, as well as the corn produced from the male parent rows, remained at all times the property of the Association. The contract further provided:

"The agreed per acre payment will be reduced for a poor crop year as follows: When the 1965 plant average female yield for adapted varieties is reduced 40% below the 3-year plant average female yield for adapted vari-

eties then the agreed payment per acre will be reduced 25%. When the 1965 plant average female yield for adapted varieties is reduced 75% below the 3-year plant average female yield for adapted varieties then the agreed payment per acre will be reduced 50%."

During the early part of 1965, an FCIC fieldman obtained plaintiffs' names from DeKalb and was informed that plaintiffs had growing contracts with the Association. The fieldman obtained crop insurance applications from plaintiffs and substantially identical policies of insurance [2] were issued to them by FCIC between February and June 1965. These policies covered plaintiffs' 1965 corn crops "to the extent of [their] interest therein," [3] against "unavoidable loss of production of [the] insured crops due to the causes specified, * * *" including drought. The policy also provided:

"The insured acreage for a crop for each crop year shall be that acreage in the county planted to the crop on land for which a premium rate is shown on the county actuarial table and in which crop the insured had an interest at the time of planting as reported by the insured or as determined by the Corporation, whichever the Corporation shall elect. * * * The interest insured shall be the interest of the insured at the time of planting in the insured crop grown on insured acreage as reported by the insured or as determined by the Corporation, whichever the Corporation shall elect. * * *

---

1. Hybrid seed corn is produced through cross-pollination of two inbred lines of corn. The corn is planted so that six rows of parent plants grown from seed on one inbred line (female rows) alternate with two rows of parent plants grown from seed of the other imbred line (male rows). The *hybrid* seed grows only on the plants in the female rows. These female plants are detasseled to prevent self-pollination.

2. The insurance contract and corn endorsement were part of defendant's regulations, and appear at 7 C.F.R. §§ 401.11 and 401.20 (1964).

3. The various policies differed as to coverage per bushel and premium rate per acre.

"2. RESPONSIBILITY OF THE INSURED TO REPORT ACREAGE AND INTEREST

"Promptly after planting the insured crops each year the insured shall submit to the county office, on a form prescribed by the Corporation, a report showing all acreage in the county planted to each insured crop (including a designation of any acreage of an insurable crop covered by the contract to which insurance does not attach) in which he has an interest and his interest therein at the time of planting.

\*    \*    \*    \*    \*    \*

"13. AVOIDANCE OF CONTRACT

"The Corporation may void the contract with respect to any crop without affecting the insured's liability for premiums or waiving any right or remedy including the right to collect any unpaid premiums if at any time, either before or after any loss, the insured has concealed or misrepresented any material fact or committed any fraud relating to the contract, with respect to such crop, and such voidance shall be effective as of the beginning of the crop year with respect to which any such act or omission occurred."

The policy further provided that the bushel guarantee and the price at which the indemnities were to be computed were to be those established by the FCIC and shown on the county actuarial table. Additionally, "the bushel guarantee per acre shown on the county actuarial table shall be increased by three bushels for any harvested acreage on which the amount harvested is three or more bushels per acre." The county actuarial tables showed 38 guaranteed bushels per acre for all plaintiffs except for 128.6 acres (Unit 1) of Clifford Mooday and all acres of Leon Ayers, for whom there were 52 guaranteed bushels per acre.

After planting their crops, plaintiffs filed their acreage reports with FCIC, as required by the policies, on forms provided by FCIC. These reports disclosed the following information:

| Producer | Crop | Total Acres in Which You Have an Interest | Your Share | Name of Other Person Sharing |
|---|---|---|---|---|
| Emery L. Parks | | | | |
| Unit 1— | Corn | 255 | All | |
| Unit 2— | Corn | 100 | ½ | Chancy Finfrock |
| Leon Ayers | | | | |
| | Corn | 175 | All | |
| Roy Threlkeld | | | | |
| Unit 1— | Corn | 21 | ½ | Florence Ilgenfritz |
| Unit 2— | Corn | 122 | ½ | Chas. Doubet |
| Clifford Mooday | | | | |
| Unit 1— | Corn | 80 | ½ | Chas. Doubet |
| Unit 2— | Corn | 130 | ½ | Chas. Doubet |
| Chancy Finfrock | | | | |
| | Corn | 100 | ½ | Emery L. Parks |
| Darlington Conservation Club | | | | |
| | Corn | 55 | All | |

After plaintiff's crops suffered damage due to drought, they filed claims with defendant for the loss on the female acres for the following amounts:

| Plaintiff | Amount |
| --- | --- |
| Emery L. Parks | $4,081.80 |
| Leon Ayers | 7,323.50 |
| Roy Threlkeld | 531.22 |
| Clifford Mooday | 2,825.10 |
| H. Ivan Sadler, Trustee of the Estate of Chancy Finfrock | 1,154.26 |
| Darlington Conservation Club | 660.35 |

FCIC's state director for Indiana rejected plaintiffs' claims on the ground that, under the growing contracts, all interest in the corn was allegedly owned by the DeKalb Agricultural Association, and none by the plaintiffs. Defendant subsequently refunded all premiums paid by plaintiffs for insurance coverage on the crops in question.

The district court, in holding for FCIC, concluded:

"The plaintiffs made misrepresentations of material facts in the acreage reports that they filed with defendant in that they represented that their share of the corn on the insured acres was 'all' or '½,' whereas the true facts were as follows:

a. Plaintiffs had no interest whatsoever in the corn grown on that part of the reported acreage that was commonly known as 'male acreage' and 'male parent rows,' since the entire interest in such corn was in the Association. Since two rows out of every eight were 'male parent rows,' this misrepresentation affected one-fourth of the reported acreage.

b. Plaintiffs had no interest whatsoever in the first twenty bushels of seed corn produced on the female rows (the remaining ¾ths of the reported acreage). The entire interest in such seed corn was in the Association.

c. Plaintiffs had no property interest in the corn grown in the female rows in excess of 20 bushels per acre, the entire property interest therein being in the Association. Plaintiffs' only interest in such 'bonus bushels' was a financial one—the right to bonus payment of $1.25 per bushel. This potential financial interest in such 'bonus bushels' amounts to only a minute fractional share of the full value thereof, since the market value of the seed corn that plaintiffs produced in the fall of 1965 was $26 per bushel."

This appeal presents two issues for review: (1) whether plaintiffs had insurable interests in the corn crops; (2) whether plaintiffs misrepresented a material fact in reporting their acreage to FCIC.

I

■ To determine whether or not plaintiffs had insurable interest in the crops,[4] we must look to the statutes governing the defendant agency. Section 508(a) of the Federal Crop Insurance Act (7 U.S.C. § 1508(a)) authorizes FCIC "* * * to insure * * * producers of * * * agricultural commodities under any plan or plans of insurance determined by the Board to be adapted to any such commodity." We must, therefore, determine whether plaintiffs are "producers" under the Act.

Defendant argues that, although one may be a producer even if he lacks technical title to a crop, plaintiffs are not producers since they allegedly undertook no risk of production. Rather, defendant contends, plaintiffs are being paid a flat rate—$100—per acre for simply providing land and services, not for selling crops. Plaintiffs, on the other hand, argue that "producer" is used in the Act to mean a grower of the crops in question and that since plaintiffs are growers, they are producers.

4. FCIC, in its motion for summary judgment, conceded that plaintiffs have insurable interests in the crops "as that term is generally understood in law," but went on to argue that these interests were not the type insurable under the Act and the policies.

As supporting authority, plaintiffs cite Tennessee Burley Tobacco Growers' Association v. Commodity Credit Corp., 350 F.2d 34, 41 (6th Cir. 1965), where the court held that "producer," under the Agricultural Adjustment Act of 1949 (7 U.S.C. § 1421 et seq.), was used in "its ordinary sense and is intended to apply to persons or organizations that grow tobacco, such as the owner of a farm, a tenant on a farm, a sharecropper or similar person. The term does not encompass an incorporated organization such as the Association here involved which does not grow crops, but merely receives them from producers for handling." This interpretation comports with the dictionary definition of producer as "[o]ne who grows agricultural products. * * *" Webster's New International Dictionary, Second Edition, Unabridged. See also Allen v. Smith, 173 U.S. 389, 399, 19 S.Ct. 446, 43 L.Ed. 741 (1899), where the Supreme Court held that producer is "commonly used to denote a person who raises agricultural crops, and puts them in a condition for the market."

Elm Spring Farm v. United States, 127 F.2d 920 (1st Cir. 1942), cited by FCIC, does not compel a different conclusion. Rather, that case held that "herdsmen," rather than a cooperative, were the "producers" of the milk in question, although the Cooperative held title to the cows. Although different schemes were employed by the Association and the Cooperative in the *Tennessee Burley Tobacco* and the *Elm Spring Farm* cases, we are of the opinion that the reasoning of those cases supports the conclusion that the plaintiffs, and not DeKalb, are the producers of the corn crops in question in the instant controversy. We disagree with defend-

ant that plaintiffs undertook no risk of loss due to their contracts with DeKalb. As we shall further discuss later in the opinion, plaintiffs bore a risk of loss to the extent of the difference between the minimum and maximum amounts payable on their crops. We hold that plaintiffs were, under the act, the producers of the corn crops raised on their land.

Defendant next contends that even if plaintiffs are "producers," the crops still could not be insured under the Act since the plaintiffs' only interests in the crops were allegedly limited to profits, not investment. Since, under § 508(a),[5] FCIC can provide insurance solely to protect a farmer's investment in his crops, defendant argues that plaintiffs' interests were uninsurable. Defendant's argument rests on the assertion that plaintiffs were "guaranteed" $100 per acre by the contracts with DeKalb, and that since their claims were only for the "bonus" payments of $1.25 per bushel above 20 bushels per acre, and since this amount represented profit, FCIC could not have provided insurance for the amounts claimed.

We fail to see how § 508(a) precludes, as a matter of law on the record before us, any recovery for plaintiffs. Defendant's argument on this point goes to the amount of recovery rather than to the fact of insurable interest. Thus, while FCIC could not insure plaintiffs against lost profits, there is no evidence in the record as to the amount of each plaintiff's investment as related to his claim. Without such evidence there is no basis for a holding that plaintiffs' claims are based solely on lost profits.

Moreover, plaintiffs are not "guaranteed" $100 per acre by DeKalb. The contract between plaintiffs and the asso-

5. § 508(a) (7 U.S.C. § 1508(a)) provides in pertinent part:

"* * * Any insurance offered against loss in yield shall not cover in excess of 75 per centum of the recorded or appraised average yield of the commodity on the insured farm for a representative period * * *: *Provided*, That if 75 per centum of the average yield represents generally more protection than the investment in the crop in any area, taking into consideration recognized farming practices, the Board shall reduce such maximum percentage so as more nearly to reflect the investment in the crop in such area. * * *."

ciation provides that "the agreed payment per acre [$100] will be reduced" either 25% or 50% "for a poor crop year," based on reduction of the average female yield of the Association below the three-year average. Thus, plaintiffs were "guaranteed" either $50, $75, or $100 per acre under the contract, which amounts, while probably reflecting investment, cannot be presumed, on the record before us, to cover the entire investment in the crops. Although the potential reduction in payment per acre might not directly relate to plaintiffs' particular crops, its presence creates a risk which is borne by plaintiffs.

We also reject defendant's additional argument that plaintiffs' interests are indeterminable and not readily calculated by the formula prescribed by the policies.[6] Again, this argument runs to the amount of loss rather than to the fact of insurable interest. Plaintiffs are claiming loss only to their female parent crop and claim an insurable interest only in excess of 20 bushels per acre. We hold that on the record before us summary judgment cannot be justified on the ground that plaintiffs had nondeterminable interests.

█ █ It can hardly be contested that plaintiffs suffered some type of loss due to the damage to their crops caused by the drought. Whether this loss represents profits, which are uninsurable under the Act, or loss on investment, which was properly insured, must be determined upon remand. For purposes of this appeal it is sufficient that plaintiffs had some interests in the crops which were insurable under the Federal Crop Insurance Act. It is well settled that one has an insurable interest in

property by the existence of which he receives a benefit, or by the destruction of which he suffers a loss, regardless of whether he has title to the property. Harrison v. Fortlage, 161 U.S. 57, 63, 16 S.Ct. 488, 40 L.Ed. 616 (1896); Lititz Mutual Insurance Co. v. Lengacher, 248 F.2d 850, 853 (7th Cir. 1957); Burroughs Corp. v. Barry, 380 F.2d 427, 432 (8th Cir. 1967). Under this test, plaintiffs had insurable interests in the corn crops. Since their interests were not in any of the categories excluded from coverage by the regulations, 7 C.F.R. § 401.5 (1967)[7] the plaintiffs' interests were insured by the policies issued by FCIC to the extent allowable under § 508(a) of the Act.

## II

█ The next issue is whether plaintiffs' nondisclosure of their contracts with the DeKalb Agricultural Association constituted misrepresentation of a material fact such as would permit FCIC to avoid the contract of insurance. Defendant contends that by entering either "all" or "½" in the column of the acreage report entitled "Your Shares" each plaintiff misrepresented the allegedly material fact of DeKalb's "interest" in the crops. Plaintiffs argue that there were no misrepresentations since "all" or "½" correctly reflected each plaintiff's interest in the proceeds of his crop, and even if there were misrepresentations they were not of a material fact since the existence of the contracts with DeKalb would not have been material to the risk which FCIC was insuring.

█ Assuming *arguendo* that the nondisclosure of the DeKalb contract

6. " * * * The amount of loss with respect to any insurance unit shall be determined by (1) multiplying the insured acreage of corn on the insurance unit by the applicable bushel guarantee per acre, which product shall be the bushel guarantee for the insurance unit, (2) subtracting therefrom the total production to be counted for the insurance unit, (3) multiplying the remainder by the insured in-

terest, and (4) multiplying the result obtained in (3) by the applicable price per bushel for computing indemnities * * *."

7. "An interest in an insured crop existing by virtue of a lien mortgage, garnishment, levy, execution, bankruptcy, or any involuntary transfer shall not entitle the holder of the interest to any benefit under the contract."

constituted a misrepresentation, we fail to see how it was material. The test of materiality in insurance law is whether the facts if truly stated might reasonably have influenced the insuror in deciding whether it should reject or accept the risk, and whether a higher premium should be charged. Billington v. Prudential Insurance Co., 254 F.2d 428, 431 (7th Cir. 1958); Prentiss v. Mutual Beneficial Health & Accident Association, 109 F.2d 1 (7th Cir. 1940), cert. den. 310 U.S. 636, 60 S.Ct. 1079, 84 L. Ed. 1405; Jannenga v. Nationwide Life Insurance Co., 109 U.S.App.D.C. 385, 288 F.2d 169 (1961). FCIC claims that the plaintiffs' contracts with DeKalb would have influenced the decision to issue the policies in question since "plaintiffs were not calling upon FCIC to insure plaintiffs' investment in the crop but, rather, only their potential profit."

However, as we have heretofore discussed, the record is barren of any proof that plaintiffs' claims are based solely on lost profits, rather than investment. Plaintiffs' reported share of "all" or "½" of their crops relates, as with other agricultural producers, to the proceeds therefrom which were lost due to the hazard against which FCIC insured them. Only 75% of the loss in yield above 20 bushels, or some other percentage representing the investment in the crops, may be payable under § 508(a) of the Act. FCIC has failed to show how the growing contracts with DeKalb would have influenced the decision to issue policies of insurance to these plaintiffs. If anything, by providing for a minimum compensation per acre, the DeKalb contracts lowered the potential loss and made the insurance risk more attractive. We hold that there was no misrepresentation of a material fact and that the judgment below must be reversed and the case remanded.

### III

Upon remand, there remains the issue of damages. Having had interests in the crops which were insurable by FCIC, the plaintiffs must now show the extent to which their interests represent investment, rather than profit, as required by § 508(a). It may well be that, having received their minimum payments from DeKalb for the first 20 bushels per acre,[8] the remaining amount—the difference between the 20 bushels per acre and the guaranteed production based on the county actuarial tables—represents only profit. We express no opinion on this point. This can be determined only by further proceedings in the district court. Thus, additional evidence may demonstrate that the interests of the plaintiffs were not insured due to their amounts, rather than their character as contended by FCIC in its motion for summary judgment and on appeal. We therefore remand the case to the district court to determine the issue of damages in accordance with the views expressed in this opinion.

Reversed and remanded.

---

8. There is nothing in the record which indicates how much DeKalb paid to each plaintiff.