**CITIZENS BANK OF JONESBORO,**
**Appellant,**

v.

**The FEDERAL CROP INSURANCE**
**CORPORATION, Appellee.**

No. 76–1188.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1976.

Decided Dec. 27, 1976.

Stephen M. Reasoner, Jonesboro, Ark., for appellant.

Walter G. Riddick, Jr. Asst. U.S. Attorney, Little Rock, Ark., for appellee; W. H. Dillahunty, U.S. Atty., Little Rock, Ark., on brief.

Before LAY, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

The appellee, Federal Crop Insurance Corporation (FCIC) agreed to indemnify cotton crop losses on E. L. Cupp's Arkansas farm. Following foreclosure of its mortgage on Cupp's farm, the Citizens Bank of Jonesboro (the Bank) brought this action, as successor in interest of Cupp, for benefits under the FCIC policy. FCIC admitted that it was liable under the policy, but FCIC disputed the extent of its liability. The district court (Judge Oren Harris) determined that FCIC had adjusted the loss in conformity with the terms of the policy and denied the Bank's claim to additional benefits. The Bank brought this appeal. We affirm the district court.

An explanation of the conflicting claims in this case rests upon differing constructions of policy provisions. Item 3 of the Cotton Endorsement to the policy entitled Production Guarantee, reads as follows:

> The production guarantees per acre shown on the county actuarial table ( *hereinafter called "actuarial table"*) are progressive as follows: (1) First Stage—after it is too late to plant cotton until the first blooms are shed, (2) Second Stage—after the first blooms are shed and until acreage qualifies for the third stage, or (3) Third Stage—after harvest of at least 20 percent of the pound guarantee per acre for this stage and to the end of the insurance period * * *. The pound guarantee applicable to such acreage shall be that established for the stage reached by the crop at the time of such damage as determined by the Corporation.

A county actuarial table attached to the policy established the production guarantee per acre for each stage of production for land in the county where Cupp's farm was located. The production guarantee per acre was 165 pounds in the second stage, and 220 pounds in the third. The actuarial table also provided that FCIC would pay the insured 25 cents for each pound that the actual harvest fell below the applicable production guarantee. The stipulated facts disclose that Cupp planted 1027.9 acres of cotton on the insured farm unit in 1972. The parties agree that the cotton had shed its first blooms, thus bringing the entire crop within the policy's second stage classi-

fication. Cupp harvested 668.6 acres, producing 139,236 pounds of cotton. FCIC paid the bank third stage benefits as to this portion of the Cupp farm. No harvesting had occurred on the remaining 359.3 acres.

As has been noted, the third stage applies where at least 20 percent of the pound guarantee per acre for that stage has been harvested. The Bank contends that since the policy is written on an "insurance unit", which means all of the insurable acreage of the insured crop in the county at the time of planting in which the insured has a 100 percent interest,[1] i. e., the entire 1027.9 acres, the 20 percent referred to is 20 percent of the production guarantee for the entire 1027.9 acres. The actual harvest of 139,236 pounds was far more than 20 percent of the third stage production guarantee for the whole unit, 226,138 pounds (1027.9 acres times 220 pounds per acre), so the Bank contends that all of the 1027.9 acres should qualify for third stage guarantees, including the 359.3 acres on which no harvesting was done.

FCIC, on the other hand, contends that at least 20 percent of the cotton must be harvested from each portion of the unit for the crop on that portion to qualify for third stage guarantees. FCIC therefore asserts that the 359.3 acres upon which no harvesting was done cannot qualify for third stage guarantees, and paid the Bank under the second stage production guarantee as to that portion of the Cupp unit.

Under the Bank's interpretation of the contract, the Bank would receive an additional $4,940.38, 359.3 acres × 220 pounds × 25 cents, the third stage formula, less

359.3 acres × 165 pounds × 25 cents, the second stage formula.

Paragraph 3 of the Cotton Endorsement, quoted previously, which defines the third stage in the policy's production guarantee scheme, provides that when "20 percent of the pound guarantee per acre" has been harvested, the third stage has been reached. The FCIC argues that the "per acre" language means that the 20 percent requirement must be applied on an acre-by-acre basis. The appellant-Bank construes this phrase to refer only to the mathematics of loss computation, and that the 20 percent requirement refers to 20 percent of the entire insured acreage. For the reasons stated below, we reject appellant's position and affirm the judgment of the district court.

■ We note that a separate section of the Cotton Endorsement governs claims for loss, and as relevant, does refer to a determination of loss for *each unit*. That section, as pertinent, reads:

> 5. Claims for loss. * * *
>
> *   *   *   *   *   *
>
> (c) Losses shall be determined separately for each unit. The amount of loss with respect to any unit shall be determined by (1) multiplying the insured acreage of cotton *on the unit* by the applicable production guarantee per acre, which product shall be the *production guarantee for the unit*, (2) subtracting therefrom the total production to be counted for the unit, (3) multiplying the remainder by the applicable price for computing indemnities, and (4) multiply-

---

1. 19. MEANING OF TERMS

For purposes of the crop insurance program:

*   *   *   *   *   *

(e) "Insurance unit" means all the insurable acreage of the insured crop in the county at the time of planting (1) in which the insured has a 100 percent interest, (2) which is owned by one person and operated by the insured as a tenant, or (3) which is owned by the insured and rented to one tenant. Land rented for cash or for a fixed commodity payment shall be considered as owned by the lessee.

The Corporation and the insured may agree in writing before insurance attaches in any crop year to divide the insured's insurable acreage of the insured crop in the county into two or more units.

The Corporation shall determine units as herein defined when adjusting a loss, notwithstanding what is shown on the acreage report, and reserves the right to consider any acreage and interest reported by or for the insured's spouse, child, or any member of his household, to be the bona fide interest of the insured or any other person having the bona fide interest.

ing the result obtained in (3) by the insured interest[.] * * *

The total production to be counted for a unit shall be determined by the Corporation and, subject to the provisions hereinafter, shall include *all harvested production* and any appraisals made by the Corporation for unharvested, or potential production * * *: *Provided, That the production to be counted* for any acreage of cotton (1) *which comprises an insurance unit or any portion thereof and is not eligible for the production guarantee for the third stage shall be the amount by which the appraised and harvested production for such acreage exceeds the difference between the production guarantee applicable for such acreage and the production guarantee applicable for the third stage* * * *. [Emphasis added.]

This section demonstrates the unfortunate tendency of some administrative agencies to write in a form of bureaucratic language that is the antithesis of clear, succinct, and understandable English. Nevertheless, we shall try to parse this linguistic maze in order to determine the intended meaning of the policy.

The term "unit", as used in section 5(c), could, standing alone, refer to "insurance unit", which is specifically defined by the policy to mean all the insured acreage.[2] However, section 5(c) gives to the insurer corporation the right to determine "the total production to be counted for a unit." Thus, while it seems clear that the entire loss is to be determined on a unit basis, the proviso contained in the second paragraph of section 5(c) refers to acreages of cotton "(1) which comprises an insurance unit *or any portion thereof* * * *." (Emphasis added). Additionally, that same section 5(c) of the Cotton Endorsement instructs that upon measuring the loss:

The total production to be counted for a unit shall be determined by the Corporation and, subject to the provisions hereinafter, shall include all harvested production and any appraisals made by the Corporation for *unharvested, or potential production* * * *[.] [Emphasis added.]

Appraisal of unharvested or potential production refers to stages other than stage three. That language of the policy, in our judgment, gives the FCIC the right to determine that cotton on a portion of the insurance unit is not eligible for the third stage production guarantee. Thus, the 20 percent harvest requirement for the stage three production guarantee need not apply to the whole insurance unit, but may apply to a portion thereof.

This construction of the policy appears consistent with the scheme of the crop insurance authorized under § 508(a) of the Federal Crop Insurance Act (7 U.S.C. § 1508(a)), which permits the FCIC to provide insurance solely to protect a farmer's investment in his crops, not unrealized profits which are not insurable under the Act. *See Parks v. Federal Crop Insurance Corp.,* 416 F.2d 833, 838–39 (7th Cir. 1969).

The district court in its opinion observed:

The Court, after considering the matter carefully, is of the opinion that the position taken by the defendant Federal Crop Insurance Corporation is correct. In other words, the Court holds that under the terms of the policy, before a part of an insurance unit may be considered to be in the third stage of production, 20 percent of the crop growing on that part must have been harvested. Such a construction is consistent with the apparent intent of the insurance program, which is to recoup the insured farmer's investment in his crop when that crop is lost or damaged by reason of hazards covered by the insurance.

In this determination, the district court did not necessarily decide that each acre must undergo some harvesting to fall within the third stage production guarantee. Appellant produced no evidence to reflect adversely on FCIC's separation of the Cupp farm into a harvested and an unharvested portion of the whole unit.

2. *See* note 1 *supra.*

The district court's opinion is in accord with the policy provisions. Accordingly, we affirm.