**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JERROLD A. WATSON; MARY E.
WATSON,
<u>Plaintiffs-Appellants,</u>

v.                                                          No. 96-1428

SHIRLEY S. CHATER, COMMISSIONER OF
SOCIAL SECURITY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CA-93-2404-8-8AJ)

Argued: October 29, 1996

Decided: January 7, 1997

Before MURNAGHAN and MICHAEL, Circuit Judges, and
DOUMAR, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gary Tusten Pope, POPE & HUDGENS, P.A., Newberry,
South Carolina, for Appellants. John Jarrett, Assistant Regional
Counsel, SOCIAL SECURITY ADMINISTRATION, Atlanta, Geor-
gia, for Appellee. **ON BRIEF:** Frank W. Hunger, Assistant Attorney

General, J. Rene Josey, Interim United States Attorney, Mary Ann Sloan, Acting Chief Counsel, Region IV, Mack A. Davis, Acting Deputy Chief Counsel, Dennis R. Williams, Supervisory Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerrold A. Watson and Mary E. Watson appeal the district court's judgment affirming the Commissioner's decision that the Watsons were overpaid $8,447.00 in Social Security benefits. We affirm.

The Watsons, who are peach farmers in Monetta, South Carolina, began receiving Social Security retirement insurance benefits after filing an application on October 24, 1984. In 1988 a late frost killed the buds on the Watsons' peach trees, leaving them without a crop that year. The Watsons received $231,207.00 in crop insurance for this damage. Although the Watsons reported the insurance recovery as taxable income on Schedule F of their 1988 income tax return, they did not report it to the Social Security Administration. In April 1990 the Social Security Administration informed the Watsons that they had been overpaid $8,447.00 in benefits for 1988 because the federal crop insurance proceeds, which were net earnings from self-employment, had not been taken into account.

Section 403(b) of the Social Security Act, 42 U.S.C.§ 403(b), provides that deductions will be taken from the retirement insurance benefits of an individual under age 70 who has "wages and self-employment income" in excess of the allowable amount. Section 411(a) defines earnings from self-employment, and section 411(a)(3) allows for certain exclusions:

2

> (3) There shall be excluded [from such earnings] any gain or loss . . .

> (C) from the sale, exchange, involuntary conversion, or other disposition of property if such property is[not] . . .

> (ii) property held primarily for sale to customers in the ordinary course of the trade or business.

The regulations, 20 C.F.R. § 404.1084, define"other disposition" to include "destruction or loss by . . . storm . . . or other casualty." 20 C.F.R. § 404.1084(c)(2).

The Commissioner found that the insurance proceeds paid to the Watsons were a "gain . . . from the . . . disposition . . . of property . . . held primarily for sale to customers in the ordinary course of the trade or business" and therefore counted as earnings from self-employment. We agree with the Commissioner's interpretation. Peaches constitute property held for sale in the ordinary course of the Watsons' business, and the insurance proceeds were compensation for the destruction of their peach crop. The insurance proceeds were paid to the Watsons under the Federal Crop Insurance Program, 7 U.S.C. § 1508, which indemnifies insured farmers against "loss of the insured [agricultural] commodity due to unavoidable causes, including . . . frost." 7 U.S.C. § 1508(a) (1988). Moreover, the insurance proceeds were calculated on estimated crop yield and expected market price. See id.[1]

The Watsons contend that the insurance proceeds were compensation for the loss of capital in the production of the peach crop, rather than compensation for the peach crop itself. They rely on one sentence in Parks v. Federal Crop Ins. Corp., 416 F.2d 833, 838 (7th Cir. 1969), which states that the Federal Crop Insurance Corporation "can

_____

[1] The Commissioner's interpretation is also consistent with the treatment of insurance proceeds under Treasury regulations. See 26 C.F.R. § 1.61-4(c) ("Proceeds of insurance, such as hail or fire insurance on growing crops, should be included in gross income to the extent of the amount received in cash or its equivalent for the crop injured or destroyed.").

3

provide insurance solely to protect a farmer's investment in his crops."**2** Parks, however, was simply making the point that a farmer must have an investment in a crop in order to have an insurable interest. In Parks the farmers were raising seed corn under contract for sponsors who furnished the seed, planting supervision, and labor. The issue was whether the farmers had an insurable interest in production levels for which bonus payments of $1.25 per bushel would be made. The court in Parks recognized that the farmers undertook some risk of production and suffered some loss due to drought. According to the court, if the farmers' loss was based on their investment risk in the crop -- and not based on lost profits -- the farmers had an insurable interest. Thus, Parks simply dealt with whether the farmers had some investment risk in the crop that qualified as an insurable interest under the Federal Crop Insurance Act. Parks did not deal with the issue facing us here, and the case does not detract from our conclusion.

The Watsons' peach crop was lost, and the insurance proceeds compensated them for this loss. Those proceeds constituted earnings from self-employment under 42 U.S.C. § 411(a). The judgment of the district court is therefore

AFFIRMED.

_____

**2** The language in 7 U.S.C. § 1508(a) relied upon by the Parks court in making this statement was deleted from the act in 1980. See Federal Crop Insurance Act of 1980, Pub. L. No. 96-365,§ 105(2), 94 Stat. 1312, 1314-15.

4