## VICTORY CABINET CO. v. INSURANCE CO. OF NORTH AMERICA.

### No. 9985.

United States Court of Appeals
Seventh Circuit.

June 30, 1950.

Alvin E. Stein, Max Satt, Irving Rothholtz, Chicago, Ill. (Pines & Stein, Chicago, Ill., of counsel), for appellant.

Paul H. Heineke, Clarence R. Conklin, Abner Goldenson, Chicago, Ill. (Heineke & Conklin, Chicago, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

This suit was instituted in the Circuit Court of Cook County on October 16, 1947. The plaintiff Victory Cabinet Company, an Illinois corporation, sought to recover from six insurance companies the sum of $25,000 with interest under the terms of business interruption policies issued by the defendants. The Baltimore American Insurance Company of New York filed its petition and bond for the removal of the cause to the District Court of the United States for the Northern District of Illinois, Eastern Division.

The transcript of removal record was filed in the District Court on December 10, 1947. On December 17, 1947, plaintiff moved to remand the cause to the Circuit Court of Illinois. The motion to remand was denied on January 19, 1948.

Thereafter, in February 1949, the cause was heard by the District Court, without the intervention of a jury. Judgment was entered for the defendants and against the plaintiff for costs.

On this appeal the plaintiff-appellant contends:

1. That the trial court erred in refusing to remand the case to the state court.

2. It was error to hold that plaintiff had no cause of action because it failed to file proof of loss—(a) because no proof of loss was required under the business interruption provisions of the policies, and (b) because the defendants waived proof of loss, and

3. The trial court erred in failing to find issues for plaintiff.

We propose to examine these contentions in the order in which they are stated.

I. Since the removal of this case from the courts of Illinois took place prior to September 1, 1948, the applicable statute is the Act of March 3, 1875 as amended and in force in December 1947, 28 U.S.C.A. §§ 71–72, 1927 Edition.

That statute provides: "When in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district." 28 U.S.C.A. § 71, 1927 Ed.[1]

In Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, on page 244, 25 S.Ct. 251 on page 253, 49 L.Ed. 462, the Supreme Court said:

"Certain principles, relating to the removal of cases, have been settled by former adjudications. They are:

"1. If a case be a removable one, that is, if the suit, in its nature, be one of which the Circuit Court could rightfully take jurisdiction, then upon the filing of a petition for removal, in due time, with a sufficient bond, the case is, in law, removed, and the state court in which it is pending will lose jurisdiction to proceed further, and all subsequent proceedings in that court will be void. New Orleans M. & F. Railroad Company v. Mississippi, 102 U.S. 135, 141, 26 L.Ed. 96, 98; Baltimore & O. Railroad Co.

v. Koontz, 104 U.S. 5, 14, 26 L.Ed. 643, 645; National Steamship Company v. Tugman, 106 U.S. 118, 122, 1 S.Ct. 58, 27 L.Ed. 87, 89; St. Paul & Chicago Ry. Co. v. McLean, 108 U.S. 212, 216, 2 S.Ct. 498, 27 L.Ed. 703, 704; Crehore v. Ohio, etc. Railway Co., 131 U.S. 240, 243, 9 S.Ct. 692, 33 L.Ed. 144; Kern v. Huidekoper, 103 U.S. 485-493, 26 L.Ed. 354, 357; * * *.

"2. After the presentation of a sufficient petition and bond to the state court in a removal case, it is competent for the circuit court, by a proceeding ancillary in its nature—without violating § 720 of the Revised Statutes * * * forbidding a court of the United States from enjoining proceedings in a state court—to restrain the *party* against whom a cause has been legally removed from taking further steps in the state court. (Citing cases.)

"3. It is well settled that if, upon the face of the record, including the petition for removal, a suit does not appear to be a removable one, then the state court is not bound to surrender its jurisdiction, and may proceed as if no application for removal had been made. Stone v. South Carolina, 117 U.S. 430, 432, 6 S.Ct. 799, 29 L.Ed. 962, 963; Carson v. Hyatt, 118 U.S. 279, 281, 6 S.Ct. 1050, 30 L.Ed. 167, 168; Marshall v. Holmes, 141 U.S. 589, 595, 12 S.Ct. 62, [35 L.Ed. 870]; Burlington, C. R. & N. Ry. Co. v. Dunn, 122 U.S. 513, 515, 7 S.Ct. 1262, 30 L.Ed. 1159."

In Des Moines Elevator & Grain Co. v. Underwriters' Grain Association, 63 F.2d 103, 106, the Court of Appeals for the Eighth Circuit had for consideration among other things the action of the trial court in denying a motion to remand. The appeal was from a judgment entered upon a directed verdict in an action brought against the defendants, the Underwriters' Grain Association and 112 insurers doing business in Iowa, upon a contract of fire insurance covering a building and its contents belonging to the plaintiff in that suit. The action was originally commenced in the state court in Iowa and removed to the Federal Court by two of the defendants on the ground that diversity of citizenship and

---

1. See 1948 Revised Judicial Code, 28 U.S.C.A. § 1441.

jurisdictional amount existed between the insurer and each of the removing defendants. A motion to remand had been made by the plaintiff and denied and the action of the trial court in so doing was assigned as error.

Judge Sanborn, who delivered the opinion, said:

"While the liability of each of the insurers here arises out of the same undertaking, that liability is separate and distinct from the liability of any other insurer, and the happening of the contingency insured against, instead of giving rise to a single cause of action against all of the insurers, gives rise to 112 separate causes of action, which, under the Iowa statute, may be united in one action. The loss is not the cause of action, but the happening of the loss gives rise to a separate cause of action against each insurer. Had the plaintiff sued separately each of the removing defendants in the state court, as it might have done, the suits could have been removed to the federal court. The fact that, under the state statute, the plaintiff had the right to combine the causes of action in a single suit could not affect the right granted to the defendants by the laws of the United States to remove the controversy to the federal court.

\*   \*   \*   \*   \*   \*

"Our conclusion is that, since the undertaking which gave rise to the plaintiff's suit created no joint liability and no joint cause of action against the insurers, there were as many separate causes of action as there were insurers, and the joining of all the insurers in the single action did not affect the right of any of them to remove the case to the federal court."

■ The test of the existence of a separable controversy is almost universally stated to be that "Where there exists in any suit a separate and distinct cause of action on which a separate and distinct suit might properly have been brought, and complete relief afforded as to such cause of action, there is a separable controversy."

In the case at bar, the petition for removal alleged that the action was of a civil nature; that plaintiff sought to recover from the petitioner, Baltimore American Insurance Company of New York an amount in excess of $3,000 exclusive of interest and costs; that the claim was based upon an alleged loss sustained by plaintiff because of a business interruption caused by fire, against which loss petitioner had insured plaintiff by a policy of insurance which it had issued to plaintiff and under the terms and provisions of which it was liable to plaintiff for the loss claimed to have been sustained; that as between plaintiff and petitioner there existed a controversy which was separable from the controversy between the plaintiff and the other defendants; that at the time of the commencement of the action and at the time of the filing of the petition there was diversity of citizenship—plaintiff being a resident and citizen of the State of Illinois, and defendant being a citizen and resident of the State of New York.

The petition of removal was filed within the time fixed by the statute, 28 U.S.C.A. § 72, 1927 Ed.,[2] and no question is raised as to the sufficiency of the removal bond filed with the petitions.

■ The transcript of removal record filed in the District Court showed that the suit was based upon six separate policies of insurance, issued by six separate and distinct companies to the plaintiff, each distinctly undertaking to indemnify plaintiff against business interruption due to fire. Photostatic copies of the policies were attached to the complaint. In the case of the petitioning defendant it appeared that more than $3,000, exclusive of interest and costs, was involved.

In other words, the "face of the record" clearly disclosed that six separate and distinct suits might have been instituted, and the plaintiff might in such case have obtained complete relief against the petitioning defendant. The mere fact that state law permitted the joinder of the six distinct causes of action in a single suit did not and could not affect the defendant's right to remove under Federal Statutes. Texas Employers Ins. Ass'n v. Felt, 5 Cir., 150 F.2d 227.

2. See 1948 Revised Judicial Code, 28 U.S.C.A. § 1446.

The plaintiff in its argument calls attention to the fact that the Circuit Court of Cook County denied the prayer of the petition to remove and expressly found "that said defendant's petition fails to set forth facts showing the existence of a separable controversy between the plaintiff and this defendant." The authorities which we have cited hold that under such circumstances as appear in this case the holding of the State Court was a mere nullity and destitute of legal effect.

We are therefore constrained to rule that the District Court properly refused to remand the case at bar to the Circuit Court of Cook County.

II—The first question arising under the proof of loss issue is:

Do the insurance policies upon which this suit is brought require the preparation and filing by the insured of proof of loss?

The six policies of insurance upon which this action is based are in the form known as "standard fire policies" as required by the Insurance Code of the State of Illinois. Sec. 1009, Chap. 73, Smith Hurd's Illinois Ann.Stat. The provisions of the policies, photostatic copies of which are in the record, providing for indemnity against loss from business interruption are, in all six cases, contained in riders attached to the "standard policy" form.

The rider attached to the policy of Baltimore American Insurance Company of New York is typical:

"Rider attached to and forming a part of policy 1531 of the Baltimore American Insurance Company of New York, issued at Chicago, Illinois, dated April 12, 1946," etc.

"(1) This policy covers, subject to all its provisions and stipulations the use and occupancy of the property described as," etc.

The "standard fire policy" to which each rider is attached contains the usual proof of loss provisions, requiring the immediate written notice of any loss, protection of the property from further damages, the separation of the damaged and undamaged personal property, the furnishing of an inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cost value and amount of loss claimed, and within 60 days after the loss a proof of loss signed and sworn to by the insured as to the time and origin of the loss, the interest of the insured and of all other persons in the property, the actual cash value of each item thereof and of loss thereto the encumbrances therein, all other contracts of insurance, etc.

Of the six policies which are the basis of this suit, all but one, that of Insurance Company of North America, contained provisions insuring plaintiff against loss or damage to the contents of the building at 517-525 North Noble Street.

In its complaint plaintiff alleged that it has performed all conditions precedent required of the plaintiff to be performed in and by said policies of insurance.

The record shows that a fire occurred in the premises occupied by plaintiff, 517-525 N. Noble Street, Chicago, on the evening of Saturday, October 19, 1946. On Monday, October 21, 1946, an adjuster representing all of the insurance companies met with an independent adjuster representing the insured, and together they visited the plant of the plaintiff for the purpose of adjusting the loss. Before nightfall of Monday, October 21, they agreed upon all the fire sprinkler and water damage loss. Proofs of loss were prepared by and for the different companies and sent to the insured. They were duly returned and the agreed loss to contents, in the sum of $5,528.38 was paid to the plaintiff. The Insurance Company of North America, since it issued no insurance on contents took no part in such adjustment.

No claim was made in October for loss of profits by reason of business interruption caused by the fire. Some time later, however, the adjuster who had represented all the companies in the settlement of "contents" loss, by payment as we have related, had a conversation with Mr. Robins who was then president of the plaintiff company, and was told for the first time that plaintiff contemplated making a claim for loss of profit under the business interruption riders.

The trial court found as a fact that at this conversation the adjuster told Mr. Robins

that if any such claim was to be presented, proofs of loss should be prepared and presented for consideration of the Insurance Companies. No such proofs were ever prepared or presented, although in April 1947, six months after the fire, an accountant's statement, which the defendants produced and introduced in evidence, was left with the adjuster. It was not signed nor sworn to and does not purport to be a proof of loss.

In Feder v. Midland Casualty Co., 316 Ill. 552, 147 N.E. 468, an accident insurance case, it was held that when a plaintiff alleged in his complaint that he had performed all the conditions precedent required of the plaintiff to be performed by the insurance policy involved, he would not be permitted to show a waiver of conditions on the part of the defendant. The true rule is said to be found in Hart v. Carsley Mfg. Co., 221 Ill. 444, 77 N.E. 897, 112 Am.St.Rep. 189, 5 Ann.Cas. 720, where it is said: " 'Though an excuse for not performing a condition is for some purposes equivalent to performance, yet it is not the same thing, and therefore, in pleading, *performance must never be averred by a party who relies upon an excuse for not performing, but he must state his excuse.' "

The case of Weininger v. Metropolitan Fire Ins. Co., 359 Ill. 584, 195 N.E. 420, 424, 98 A.L.R. 169, cited on plaintiff's behalf, does not affect the situation disclosed in the record at bar. In that case a proof of loss, defective in content and form, was filed. In the case at hand no proof of loss of any kind was filed. In the Weininger case, the Supreme Court of Illinois points out the distinction which exists.

"In the case at bar, (Weininger) the record presents not a waiver of performance of making proof of loss, but simply a waiver of the manner and form of proof of loss made."

II(b)—But even if we disregard the rule laid down by the foregoing Illinois authorities, we are still confronted by the question: Does this record show a waiver of performing the condition of making a proof of loss?

The trial court in its opinion said: "The plaintiff contends that they were excused from filing any proof of loss because the Companies from the very beginning, denied any liability on that ground, I find as a fact that there was never any denial of liability until after this suit was started and an answer filed in this case, nor that the defendants ever, at any time, did anything that amounted to a waiver of the filing of a proof of loss."

III—As to the third contention of plaintiff, we can add nothing to what was said by the trial court.

"The case presents for decision various questions of fact and law and was tried at considerable length before the court without a jury. There is no dispute about the existence or contents of the policies. Neither is there any dispute but that the actual loss to contents resulting from the fire has been fully adjusted, agreed upon, and paid in cash. The disputes of fact concern duration of the interruption of business, if any, the probable profits that could have been earned during that time, if any, and the legal questions as to the measure of damage and whether or not failure to comply with the sixty day clause in the standard insurance policy provided by the Legislature of Illinois is a bar to the action. Inasmuch as a court of review will be interested in my findings of fact, I will take these matters up in the order above indicated.

"As to the first question of fact above indicated, the trial was not many hours old before it became apparent to the Court that the plaintiff's claim was being inflated and unreasonably exaggerated. It was claimed that the company was practically out of production from October 19, 1946, to January 1, 1947, although while the same testimony was being introduced, it was evident that it could not have been true. The record indicates, in fact, the record is entirely clear and undisputed that plaintiff's production facilities were divided into two rooms, referred to variously as the South room and the North room, or the mill room and the assembly and finishing room. There was never any interference with milling or assembling. In fact, there was never any damage of any kind in the South room, or milling room, which constituted at least half of the plaintiff's plant. The

interruption of business in the North room, or finishing room, consisted of damages to the compressor, one or two of the tanks and some holes of small size cut by the firemen in the floor, general water damage and sprinkler leakage, all of which were paid for in the adjustment of the fire loss.

"Furthermore, in the adjustment of the fire loss, the plaintiff was allowed a substantial sum and paid a substantial sum for cleaning up this room and putting it back in order. Viewing the evidence which I considered in any way believable, the interruption of business consisted in not more than ten days duration and not more than fifty per cent loss of use of the North room. I consider this estimate to be high, as high as the evidence will possibly sustain, but I am accepting it for the purpose of this opinion in order to arrive at what I consider to be the greatest loss on account of the interruption of business which the plaintiff could claim with any degree of fairness and justness whatsoever. The fact is that the plaintiff immediately resumed operations in the North room, cleaning up and repairing cabinets which had been damaged by the fire, for all of which they were fully paid in the adjustment of the fire loss. They were fully paid for damage to the compressor and tanks, and holes in the floor were of such a character as not seriously to interfere with operations because they were immediately covered by boards and later repaired in a workmanlike manner. Thus, I find as a fact that there was a fifty per cent interruption of business in the North room for a period of ten days. I must further find as a question of fact that this slight interruption of business did not materially impair the profits of the company because it is further shown by the record that during the remainder of the year the Company built and sold every cabinet and table for which it could obtain materials. I further find as a fact that there was no evidence to prove that any delay in materials was in any way due to the fire or otherwise causally connected therewith."

\* \* \* \* \* \*

"\* \* \* Considering the matter in the aspect most favorable to the plaintiff and taking the year 1945, when they had a net profit per day of $27.85, their loss would have been $278.50 if they had been totally out of business for ten days. They were not totally out of business for that period of time, but only impaired in their business in the North room which had constituted one-half of their business, so this amount should be divided by two, which would give $139.25. This amount should again be reduced by fifty per cent because they were using the North room for most purposes immediately after the fire, so I would be forced to find, as a matter of fact, the largest amount that the plaintiff could recover on this record would be $69.63. As against this, the record shows that the plaintiff was allowed and paid a substantial sum for cleaning up the mess created by the fire and that their men worked continuously in repairing damage which was paid for under the fire losses, so it is extremely doubtful if the plaintiff suffered any loss of net profits whatsoever. These findings of fact are set forth for the convenience of a reviewing court, and if my opinion is right as to the questions of law involved, they become totally immaterial.

"Plaintiff relies heavily upon the testimony of the witness, Robins, and quotes from it extensively. The court observed the demeanor of this witness when he was on the stand, and the court took note of the evasive character of his testimony. \* \* \* The testimony of the witness, Robins, was full of such phrases as 'I would estimate' or 'perhaps' or 'about' or 'it might be.' In numerous other indefinite and uncertain statements on matters which required the facts, it was only after a request by the court and some delay that any of the company's books were brought in. This request was made by the court because of its desire to get at the facts which apparently were being muddled and rendered indefinite. The defendant appeared willing to let the proof go in its indefinite form and rely upon the failure of proof, yet the court felt some duty to try and get at the facts, but without much success. It is enough to say that as far as the witness, Robins, was concerned the court did not believe his testimony on any material point where is was not corroborated."

■ We have examined the record and are convinced that the conclusions of the trial judge on the facts here in issue, and on the credibility of the witness named, are supported by substantial evidence; that they are in truth the only conclusions that can be drawn from the record in this case.

The judgment of the District Court is affirmed.