CARL J. EBERT *v.* GRAIN DEALERS MUTUAL
INSURANCE COMPANY.

[No. 3-273A17. Filed October 31, 1973.]

*Winslow Van Horne,* of Auburn, for appellant.

*William J. Husselman,* of Auburn, *William J. Wood, John
Q. Herrin, Schortemeier, Eby & Wood,* of Indianapolis, for
appellee.

## I.

### STATEMENT ON THE APPEAL

STATON, J.—Carl J. Ebert owned and operated the Waterloo Grain Company which consisted of a grain elevator and a feed store at different locations in Waterloo, Indiana. He entered into an oral contract for the sale of his company with Carl Feller who had been with him as an employee for eleven and one-half years. Feller purchased the inventory and the right to operate the business until he could obtain financing to purchase the balance of the grain business which consisted of buildings and business equipment. Feller had the right to all income from the sale of the inventory which he purchased for Twelve Thousand Dollars ($12,000.00). Shortly after this inventory was purchased in early October, 1968, a fire destroyed the feed store building and the inventory kept there. Feller received the money from his insurance claim for the destroyed inventory, and Ebert received money for his insurance claim on the building and equipment. In addition to the standard policy coverage, Ebert had a business interruption endorsement which entitled him to recover lost income during the period necessary to restore business operations. Ebert made a claim under this endorsement which was denied by Grain Dealers Mutual Insurance Company. Later, Ebert sold what remained of his Waterloo Grain Company to third parties for Twenty Thousand Dollars ($20,000.00). The estimated value of his original grain business was Seventy Thousand Dollars ($70,000.00).

Ebert brought an action to recover Twelve Thousand Five Hundred Dollars ($12,500.00) of interruption income under the business interruption endorsement of his policy. Grain Dealers and Ebert both filed a motion for summary judgment with affidavits attached under Rule TR. 56, IC 1971, 34-5-1-1, of the Indiana Rules of Trial Procedure. The trial court sustained Grain Dealers' motion for summary judgment.

Ebert's motion to correct errors raises the question of whether there were any genuine issues of material fact or a genuine disagreement concerning the inferences to be drawn from the material facts. Our opinion will examine the material facts and the inferences therefrom which reflect upon these issues decided by the trial court:

ISSUE ONE: Did Ebert have an insurable interest covered by the business interruption endorsement?

ISSUE TWO: Did Ebert waive his income interruption claim when he failed to file his claim within the sixty (60) days proof of loss provision of the policy?

ISSUE THREE: Did Ebert release Grain Dealers from any further liability when he signed his check for the loss of the store building which indicated that the payment was being made in "Full Settlement of Fire Loss"?

Our opinion concludes that the conditional nature of Feller's interest in the business is an issue which reflects upon Ebert's insurable interest under the policy. Under Issue Two, a genuine disagreement concerning the inferences to be drawn from Grain Dealers' invitation to submit additional proof of loss and Grain Dealers intention as to compliance by Ebert existed. A genuine issue of material fact exists as to whether Grain Dealers is estopped now to require compliance with the sixty (60) day proof of loss provision. There is no evidence to support the trial court's determination of Issue Three. The evidence is to the contrary. We reverse the trial court's judgment sustaining Grain Dealers' motion for summary judgment.

## II.

## STATEMENT OF THE FACTS

Ebert purchased an insurance policy from Grain Dealers in July, 1966. This policy had an endorsement which provided

coverage of business interruption income loss. In early October, 1968, Ebert and Feller entered into an oral contract for Feller to purchase Waterloo Grain Company from Ebert. Feller had been an employee of the company for eleven and one-half years. He paid Twelve Thousand Dollars ($12,000.00) for the stock inventory. Until he could obtain a firm financial commitment to purchase the remaining assets of the business, which consisted of the elevator and store buildngs plus equipment, Feller was permitted to operate the store portion of the business. This arrangement gave Feller the right to all income resulting from the sale of the inventory. A fire destroyed the store building and the inventory on October 23, 1968. Grain Dealers paid Feller's loss claim on the inventory and Ebert's loss claim on the building. Ebert was advised by the Grain Dealers' adjusters that they had no authority to settle the business interruption endorsement provision of his insurance policy. A clause in the policy provided that proof of loss must be provided within sixty (60) days. Ebert accepted Twenty One Thousand Two Hundred and Twelve Dollars ($21,212.00) for the loss of his store building and equipment. The elevator and its inventory were at a different location and they were not affected by the fire.

Ebert contacted the Grain Dealers' home office on December 21, 1968 concerning his claim under the endorsement portion of his policy. This was the fifty-ninth day after the fire. His inquiry was answered by Grain Dealers on January 2, 1969. This answer disputed his claim, but it invited Ebert to submit proof of loss if he disagreed. He responded by submitting his claim in the form of an invoice on January 13, 1969. To this response, Grain Dealers advised Ebert that his proof of loss was insufficient and requested a more detailed accounting. Ebert complied with this request by Grain Dealers and submitted his more detailed accounting on March 13, 1969.

Ebert sold the entire, unrestored Waterloo Grain Company business to third parties in January, 1969 for Twenty Thou-

sand Dollars ($20,000.00). The business originally had an estimated value of Seventy Thousand Dollars ($70,000.00). His action against Grain Dealers upon the insurance policy endorsement for Twelve Thousand Five Hundred Dollars ($12,500.00) in lost business interruption income was filed on June 19, 1969. Both Grain Dealers and Ebert filed motions for summary judgment under Rule TR. 56 of the Indiana Rules of Trial Procedure with affidavits attached. The trial court sustained Grain Dealers' motion for summary judgment. Ebert's motion to correct errors raises the issues set forth below in our "Statement of the Issues."

## III.

## STATEMENT OF THE ISSUES

Our primary examination of the record is to determine whether there is a genuine issue of material fact or a genuine disagreement concerning the inferences to be drawn from the material facts upon any of these issues:

ISSUE ONE: Did Ebert have an insurable interest covered by the business interruption endorsement?

ISSUE TWO: Did Ebert waive his income interruption claim when he failed to file his claim within the sixty (60) day proof of loss provision of the policy?

ISSUE THREE: Did Ebert release Grain Dealers from any further liability when he signed his check for the loss of the store building which indicated that the payment was being made in "Full Settlement of Fire Loss"?

## IV.

## STATEMENT ON THE LAW

The burden to show that no material issue of fact exists is upon the movant, Grain Dealers. All doubt is to be resolved

in favor of the respondent, Ebert. *Newcomb* v. *Cassidy* (1969), 144 Ind. App. 315, 245 N.E.2d 846.[1]

Even where the material facts are not in dispute, there may be a material issue of fact requiring the denial of a motion for summary judgment if a genuine disagreement concerning the inferences to be drawn from those material facts has been established. *Rembold Motors, Inc.* v. *Bonfield* (1973), 155 Ind. App. 422, 293 N.E.2d 210. Cross-motions for summary judgment do not compel the entry of judgment for either party since each motion is to be considered separately. *Fisher* v. *Kaylor* (1969), 145 Ind. App. 148, 250 N.E.2d 19.

Motions for summary judgment in insurance contract actions present a different approach than in negligence actions. In *Ross* v. *Farmers Insurance Exchange* (1971), 150 Ind. App. 428, 277 N.E.2d 29, 37, this Court noted the difference as follows:

> "Unlike negligence cases, the undisputed facts are not juxtaposed against the standard of a reasonable man, but rather such facts are interpreted against a *specific policy provision,* and there are *certain situations* which *clearly* show that the insured has not brought himself within the confines of the policy." (Our emphasis)

ISSUE ONE: *Ebert's Insurable Interest.*

Anyone has an insurable interest in property who derives a benefit from its existence or would suffer a loss from its destruction whether or not he has title or a secured interest in the property. A right of property is not essential. Any limited or qualified interest or any expectancy of advantage is sufficient. *Parks* v. *Federal Crops Insurance Corporation* (7th Cir. 1969), 416 F. 2d 833; 4 APPLEMAN ON INSURANCE § 2123 (1969) ; 43 Am. Jur.

---

1. For a review of the general principles governing summary judgment in Indiana see *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N.E. 2d 688 and *Ross* v. *Farmers Insurance Exchange* (1971), 150 Ind. App. 428, 277 N.E.2d 29.

2d *Insurance* § 466. On the other hand, an absolute sale of the business property after obtaining insurance may take away the insurable interest of the seller and create a bar to his right of action under the policy provisions unless the insurable interest is preserved by the terms of the sale or the acts of the parties. See 4 APPLEMAN ON INSURANCE § 2241, *supra.*

What insurable interest does Ebert's business interruption endorsement cover? Generally, such insurance endorsements are designed to do for the insured what the business itself would have done had no interruption occurred. The interest protected is the right to income generated by an operating business enterprise. A business interruption endorsement protects that right by guaranteeing the normal return on investment. *National Union Fire Insurance Co. of Pittsburg* v. *Anderson-Prichard Oil Corp.* (10th Cir. 1944), 141 F. 2d 443, 445; *Northwestern States Portland Cement Co.* v. *Hartford Fire Ins. Co.* (8th Cir. 1966), 360 F. 2d 531; 4 APPLEMAN ON INSURANCE § 2329, *supra,* and 83 ALR 2d 885. The pertinent provisions of the endorsement in Ebert's insurance policy provided:

"INCOME PROTECTION INSURANCE FOR MILL,
ELEVATOR & WAREHOUSE RISKS
(Short Form)
Coverage and Limitations

"The insurance under this policy covers only against loss resulting directly from the necessary interruption of business caused by damage to real or personal property, except finished stock, on the premises occupied by the insured as described in this policy, by Fire, Lightning or herein named Supplemental Coverages, during its term.

"In the event of such damage this Company shall be liable for the ACTUAL LOSS SUSTAINED by the insured resulting directly from such interruption of business, but not exceeding Income less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or

replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage and not limited by the date of expiration of this policy.

\* \* \*

### Definitions of Terms

"The following terms wherever used in this policy shall mean:

A.  Income: The sum of (1) total net profit, (2) payroll expenses, (3) taxes, (4) interest/rents and (5) all other operating expenses earned by the business. . . ."

Ebert contends that the provisions stated above are ambiguous and as such create a genuine issue of fact for the trial court. We cannot agree with this contention. It is well settled that the construction of a written contract is a question of law for the trial court. *Rochester Capital Leasing Corp.* v. *McCracken* (1973), 156 Ind. App. 128, 295 N.E.2d 375. See also *Wilson* v. *Kauffman* (1973), 156 Ind. App. 307, 296 N.E.2d 432. The ambiguity test is whether reasonable men would find the contract subject to more than one construction. *O'Meara* v. *American States Ins. Co.* (1971), 148 Ind. App. 563, 268 N.E.2d 109 and *United States Fidelity & Guaranty Co.* v. *Baugh* (1970), 146 Ind. App. 583, 257 N.E.2d 699. Considering the purpose of business interruption insurance and the endorsement here at issue, we agree with the trial court that the endorsement is not ambiguous.

*Conditional or Absolute:* Before we can determine if Ebert retained any insurable interest after the fire, we must analyze the oral transaction of the sale in the light of the evidence. Four distinct facets of the transaction are apparent.

1.  The buildings and equipment at the two locations.
2.  The inventory on hand.
3.  The right to operate the business, and
4.  The right to income.

If the sale of the right to income after the fire is absolute and not conditional upon the purchase of the entire business,

Ebert would have no insurable interest subject to the endorsement. Feller's purchase of the buildings and equipment was conditioned upon his obtaining a firm financial commitment. This is undisputed. The purchase of the inventory was absolute. Feller not only received the income from the inventory sales before the fire but the insurance payment for the inventory loss after the fire. Parts one (1) and two (2) above are disposed of for the purpose of our analysis. We now look to the evidence to determine if Ebert had any reversionary insurable interest which may have reverted after the fire—the operational income. Ebert's deposition reflects the negotiations with Feller:

"Q. On October 5th, 1968, did you have occasion to take inventory?

"A. Yes.

"Q. Of your stock in trade?

"A. Yes we did.

"Q. And what was the occasion for that inventory?

"A. We took an inventory to arrive at the stock on hand so that Mr. Feller who was intereted [interested] in purchasing the Waterloo Grain Company—I gave him the opportunity to take over the grain stock pending the financing from Central Soya and he was interested in purchasing the business—he had been with me prior to that some eleven and one-half years.

"Q. Did he in fact take over the inventory?

"A. On approximately October the 8th, and I think a check dated October the 11th, he took over the inventory of approximately $12,000.

"Q. Was that your total inventory belonging to Waterloo Grain Company at that time?

"A. To the best of my knowledge, it was.

"Q. That included grain, seed, feed and fertilizer?

"A. Right.

"Q. Then, from approximately the 8th of October, 1968, until the 23rd of the same month, did he operate the business?

"A. For all purposes, mainly he operated the business. Yes sir.

"Q. In other words, it was at his profit and loss from that day on?

"A. As far as the stock was concerned. (Tr. 57, L. 5-31)

\* \* \*

"Q. At the time Mr. Feller took over in early October, did he open a new bank account under Waterloo Grain Company?

"A. Yes.

"Q. Was the payroll and the costs of purchases paid out of his account from that date on?

"A. Whatever date that he started—Yes. (TR. 62, L. 5-11)

\* \* \*

"Q. Was there at the time of the fire—was there being any other business besides the elevator and feed mill business operated on the properties?

"A. No. All sales we tried to turn over to Mr. Feller. I tried to close out any accounts receivable and collect any monies due me during that time. (Tr. 61, L. 11-17)

\* \* \*

"Q. Has the elevator ever been operated since the fire?

"A. The elevator on Railroad Street has been in operation since the fire.

"Q. Who is operating it at this time?

"A. A corporation of James Bailey of Garrett, Indiana, and Jerry Bowman of Waterloo, Indiana, incorporated as Waterloo Grain, Inc.

"Q. When did they take over the elevator?

"A. Approximately January—the later part of January, 1969.

"Q. There was no operation at the elevator between the 23rd of October and the date they took over?

"A. Yes—it was operated by Carl Feller." (TR. 60, L. 7-20)

Ebert's affidavit stated that he sold the elevator property on contract for a price of Eighteen Thousand Dollars ($18,-000.00) and the destroyed store property for Two Thousand Dollars ($2,000.00) to third parties. There is no evidence which would indicate that any of Feller's business operational rights or rights to income were considered in the sale. The

material fact and one of the reasonable inferences that can be gleaned from it is that Ebert sold the entire business. This Ebert could not have done if any income or operational interests remained in Feller. Feller did continue to operate the elevator where a portion of his inventory remained, but he did not participate in the sale of the business to the third parties. There is an undeniably forceful inference that Feller retained no rights in the business other than to liquidate his inventory at the elevator. His oral contract to purchase the entire business was either abandoned or he acquiesced in a mutual rescission of the oral contract; otherwise, Ebert could not have sold the entire business to third parties as the evidence clearly demonstrates.

Every available inference must be resolved in favor of Ebert and against Grain Dealers before the entry of a summary judgment. *Newcomb* v. *Cassidy, supra,* and *Rembold Motors* v. *Bonfield, supra.* The genuine issue of material fact is whether Ebert had an insurable interest which was covered by the business interruption endorsement. He sold the entire business property without any reference to Feller's pre-fire interests; therefore, there is an inference that the right to operational income must have reverted to Ebert. The trial court committed reversible error when it sustained Grain Dealers' motion for summary judgment  The conditional nature of Feller's interest is in issue.

ISSUE TWO: *Sixty Days to File Proof of Loss—Waiver?*

Grain Dealers contend that Ebert failed to properly file his proof of loss within the time provided in the policy. The policy provision provides that the insured must file his proof of loss within sixty (60) days after a casualty as a condition precedent to recovery. The sixty (60) day provision is applicable to the endorsement. *Victory Cabinet Co.* v. *Insurance Co. of North America* (7th Cir. 1950), 183 F. 2d 360; 1 COUCH ON INSURANCE § 15:30 (1959) and 83 ALR 2d 885.

Grain Dealers had been notified by correspondence of Ebert's claim on the fifty-ninth day after the fire. In subsequent correspondence from Ebert concerning his claim, Grain Dealers gave every indication that although it disputed coverage, it felt that the notice provided by Ebert was sufficient to require disposition of the claim on the merits.

Where a policy provides for notice and proof of loss within a stated period, the insured must comply with that provision as a condition precedent to recovery under the policy. *Hanover Fire Ins. Co.* v. *Johnson* (1900), 26 Ind. App. 122, 57 N.E. 277, *Potomac Ins. Co.* v. *Stanley* (7th Cir. 1960), 281 F. 2d 775. However, the insured may show a waiver of that condition by the insurer or a substantial compliance on his part with the condition. *Indiana Insurance Co.* v. *Capehart* (1886), 108 Ind. 270, 8 N.E. 285; *Newark Fire Ins. Co.* v. *Martinsville Harness Co.* (1920), 74 Ind. App. 14, 128 N.E. 616. Grain Dealers' continued invitation to submit additional proof of loss in compliance with the detailed provisions of the policy can be inferred to be a waiver. The evidence also supports a reasonable inference that Grain Dealers felt the provision had been substantially complied with by Ebert's initial correspondence within the sixty day period and by his continued compliance with their requests for a more detailed accounting. A genuine issue of material fact exists as to whether Grain Dealers is estopped from asserting the sixty (60) day proof of loss provision as a bar to Ebert's claim.

ISSUE THREE: *Did Ebert Release Grain Dealers from any further Liability?*

Grain Dealers contend that the acceptance by Ebert of a check for the fire loss suffered by him in the destruction of the store building constituted a release from any further liability. The check which served as the payment for this claim was denominated as being in "Full Settlement of Fire Loss."

Although not dealing specifically with a release under a policy of insurance, a recent decision of our Indiana Supreme Court is dispositive of this question. In *Wecker* v. *Kilmer* (1973), 260 Ind. 198, 294 N.E.2d 132, 135. Justice Hunter stated in an opinion in which all Justices concurred that:

"Two factors should be controlling in determining the effect of an agreement purporting to operate as a release: (1) Whether the injured party has received full satisfaction; and (2) Whether the parties *intended* that the release be in full satisfaction of the insured party's claim, thus releasing all successive tortfeasors from liability. See Harper & James, Torts (1956), § 10.1, Prosser on Torts (4th ed. 1971), at 304. Both are questions of fact and normally to be determined by the jury. The actual form or title of the release is immaterial and parol evidence should be permitted to determine the intent of the parties.

'A release ought to be construed from the stand-point which the parties occupied at the time of its execution.'

\* \* \*

"It is therefore clear that the above quoted release, standing alone, does *not* bar the claim asserted by plaintiff against the defendant in this litigation. The controlling factors are whether the plaintiff in fact received full satisfaction for his injuries and whether the parties to the release intended it to be in full satisfaction, both of which require a factual determination beyond the face of the instrument."

Grain Dealers' release argument is an afterthought which is not supported by the record. It is abundantly clear from the record that Ebert did not intend that the payment received for the store building loss should include his claim under the business interruption endorsement. He was told by the insurance adjusters for Grain Dealers that they had no authority to settle the endorsement liability. Any finding to the contrary is clearly erroneous.

## V.

## DECISION OF THE COURT

There is a genuine issue of a material fact: Whether Feller retained any rights to operational income after the fire.

There is undeniably forcible inference that he did not since Ebert sold the entire business to third parties without Feller's participation. If Feller's operational income interest was:

a) conditional upon the purchasing of the entire business,
b) abandoned after the fire or
c) if Feller acquiesced in a mutual rescission of the oral contract to purchase the entire business,

Ebert would have the insurable interest which is covered by the endorsement and would be entitled to recover. The trial court should not have sustained Grain Dealers' motion for summary judgment with this genuine issue of material fact undetermined by the evidence.

A genuine issue of material fact exists as to whether Grain Dealers is estopped from any reliance upon the sixty day clause. Grain Dealers' motion for summary judgment should not have been sustained as to *Issue Two*.

Granting a motion for summary judgment as to Issue Three is error as a matter of law. *Wecker* v. *Kilmer, supra.*

The judgment of the trial court should be and the same hereby is reversed with instructions to vacate its judgment granting Grain Dealers' motion for summary judgment and to decide the issues presented on the merits.

Sharp, J., concurs; Hoffman, C.J., dissents.

## DISSENTING OPINION

HOFFMAN, C.J.—I dissent from the majority opinion.

The facts as disclosed by the record before us most favorable to appellant are as follows:

Appellant Carl J. Ebert owned and operated a feed mill and grain elevator business at two separate locations in Waterloo, Indiana. On or before October 9, 1968, Ebert entered into a verbal contract with Carl E. Feller to purchase the feed mill and grain elevator, plus the business, less accounts receivable, for $50,000, plus the inventory. An inventory was

taken and on October 8, 1968, Feller paid for the inventory and took over the business using the grain mill and elevator until financing could be obtained. Ebert no longer participated in the business and its operation was solely for the profit and loss of Feller.

On October 23, 1968, a fire occurred at the feed mill completely destroying the mill and its contents. Feller continued to operate the elevator until the latter part of January, 1969, when Ebert sold the mill property and elevator to a third person for $20,000.

Feller was entitled to all the profits, to sustain any loses, and exclusively operated the business until the sale was consummated. Ebert was not entitled to the profits.

Ebert carried an insurance policy upon the property and was paid $21,212 for the building and equipment. Feller was paid for loss of inventory under a policy endorsement. The policy also contained a "business interruption" rider. Ebert made a claim under the "business interruption" rider in the amount of $12,500, the policy limits. The insurance company denied liability.

The question raised is whether or not Ebert had any interest in the mill and grain elevator business upon which to recover under the business interruption rider.

I agree with the majority that such rider is not ambiguous. The rider insured the loss of profits for the time the business was interrupted because of the fire. Feller was the only person who lost any profits during the business interruption because he was exclusively entitled to the profits.

The majority opinion states that Ebert sold the business (which would include the rights to any profit) to third persons and the evidence clearly demonstrates such fact.

I believe the evidence clearly shows the contrary. Ebert's affidavit states, in pertinent part, that:

"8. Thereafter, this affiant [Ebert] sold the elevator property, included in said sale, on contract, for the sum of $18,000 on January 7th, 1969.

"9. Thereafter, this affiant sold the property at the corner of Center Street and Union Street for the sum of $2,000.00."

Furthermore, Ebert made a written claim with the insurance company and also filed suit to recover loss of profits for six months. If he had sold the entire business he could claim only two months and thirteen days loss of profits.

This clearly demonstrates that Ebert sold only the real property that remained after the fire. He still retained the accounts receivable prior to the sale to Feller, and Feller retained all other rights.

The trial court correctly sustained the motion of Grain Dealers Mutual Insurance Company for summary judgment.

NOTE.—Reported at 303 N.E.2d 693.