**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.



IN THE

# Court of Appeals of Indiana



FILED

Oct 25 2024, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Property-Owners Insurance Company,

*Appellant-Defendant*

v.

Wildwood Court of Munster Condominium Association, Inc.,

*Appellee-Plaintiff*

---

October 25, 2024

Court of Appeals Case No.
23A-PL-2873

Appeal from the Lake Circuit Court

The Honorable Marissa J. McDermott, Judge

Trial Court Cause No.
45C01-2203-PL-204

---

**Memorandum Decision by Judge Weissmann**
Judges Vaidik and Foley concur.

**Weissmann, Judge.**

[1] After a hailstorm damaged a condominium complex's nine residential buildings, their insurer promptly investigated the claim, made three separate payments totaling nearly $30,000, and engaged in two years of ongoing negotiations. The insurer then sought to deny coverage entirely, arguing the condominium complex had forfeited all rights under the policy by failing to submit a sworn statement of loss within 60 days. The trial court granted summary judgment in favor of the condominium complex, finding the insurer had waived its right to enforce this policy requirement. We affirm.

## Facts

[2] Wildwood Court of Munster Condominium Complex (Wildwood) is a condominium complex consisting of nine two-story residential buildings in Munster, Indiana. Property-Owners Insurance Company (Insurer) was Wildwood's property insurer on April 7, 2020, when a hailstorm damaged Wildwood's buildings.

[3] The pertinent sections of Wildwood's insurance policy through Insurer provided:

### E. PROPERTY LOSS CONDITIONS

***

### 3. Duties In The Event Of Loss Or Damage

You must see that the following are done in the event of loss or damage to Covered Property:

**b.** Give us prompt notice of the loss or damage. Include a description of the property involved.

**c.** As soon as possible, give us a description of how, when and where the loss or damage occurred . . .

**e**. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**f.** Permit us to inspect the property and records proving the loss or damage.

**g.** If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance of (sic) your claim, including your books and records. In such event, your answers must be signed.

**h. Send us a signed, sworn statement of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.**

***

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

***

App. Vol. IV, pp. 216-217 (emphasis added to § E.3.h).

[4]     After Wildwood obtained estimates to repair the damage, Wildwood submitted on June 3, 2020, an insurance claim for the damage to Insurer by way of an electronic form entitled "Property Loss Notice." App. Vol. V, p. 48. Later the same day, Insurer mailed Wildwood's property management company a letter requesting proof of loss. With the letter, Insurer provided a form entitled "Sworn Statement in Proof of Loss." *Id.* at 54. This form requested, among other things, an itemization of damages within five specific categories and a sworn statement that:

- Wildwood "ha[d] not intentionally caused this loss."

- Wildwood "ha[d] not in any way done anything to violate the conditions of the policy."

- "The loss or damage did not occur as a result of [Wildwood's] willful act or failure to act."

- Wildwood had not "in any manner concealed any fact about the loss or tried to deceive the Company as to the extent of the loss."

- Wildwood "will provide any other information that may be necessary to support [Wildwood's] claim and ha[s] reviewed statutory fraud provisions on the back of this form."

*Id.* at 56.

[5]     The Sworn Statement in Proof of Loss also included the following acknowledgment: "It is understood and agreed that the furnishing of this blank form and any assistance by any representative of the Company in completing it, does not waive any rights of [Insurer] under any conditions on the policy." *Id.* at 54.

[6]     Days after sending the June 3rd letter, which Wildwood denied receiving, Insurer's independent insurance adjuster (Insurer's Adjuster) inspected Wildwood's buildings. Then on June 23, 2020, Insurer issued to Wildwood a check for $3,223.05 for hail damage to Wildwood's aluminum gutters and window screens less the $5,000 deductible. The check was accompanied by a form letter stating that the payment was for "the actual cash value of your covered damaged property, less any applicable policy deductible." *Id.* at 69. The letter also stated:

> This is not a SWORN STATEMENT IN PROOF OF LOSS as required by the policy. A PROOF OF LOSS must still be submitted to the company within 60 days of the date of loss stated above. All rights, terms, conditions, and exclusions in the policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney or other person on behalf of [Insurer]; or hired by [Insurer] on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy.

*Id.*

[7] A forensic engineer retained by Insurer (Insurer's Engineer) inspected Wildwood's buildings in October 2020 and opined that the roof shingles had not been damaged by hail during the April 7th storm. When Wildwood received no further payments from Insurer, Wildwood hired a licensed public insurance adjuster (Wildwood's Adjuster) to assist with its claim. In September 2021, Wildwood's Adjuster provided Insurer with estimates for the replacement cost value and the actual cash value of the alleged hail damage. The estimates called for removing and replacing the roofs on all of Wildwood's nine buildings. Submitted with these estimates were photographs of the hail damage and a weather report from the day of the hailstorm.

[8] Wildwood's Adjuster, Insurer's Engineer, and Insurer's Field Claims Representative jointly re-inspected Wildwood's buildings on November 10, 2021. Insurer then made two additional payments to Wildwood: $19,780.08 on November 24, 2021, and $6,405.27 on January 7, 2022. These payments were for various damages to gutters, downspouts, air conditioning unit condenser fins, metal roof vents, rain caps, and pipe jacks and for some shingle replacement around those components.

[9] Two months after the third payment was made, Wildwood sued Insurer for breach of its insurance policy due to Insurer's failure to pay for new roofs on Wildwood's buildings. In its answer to Wildwood's complaint, Insurer raised many affirmative defenses, including that Wildwood had waived all coverage under the policy by failing to submit a timely Sworn Statement in Proof of Loss form (Coverage Defense). Wildwood did not dispute that it never submitted a

Sworn Statement in Proof of Loss form, but Wildwood attributed the omission to Insurer's alleged failure to provide the form as the policy dictated.

[10] Wildwood moved for partial summary judgment, claiming Insurer had waived the Coverage Defense through its three partial payments under the policy. Insurer later moved for summary judgment based on its Coverage Defense.

[11] The trial court granted partial summary judgment to Wildwood, ruling only that Insurer had waived its Coverage Defense. The court later relied on this ruling in denying Insurer's motion for summary judgment. At Insurer's request, the court certified for interlocutory appeal the court's grant of partial summary judgment to Wildwood. This Court accepted jurisdiction.

## Discussion and Decision

[12] Insurer appeals the trial court's grant of partial summary judgment to Wildwood and asks this Court to order the court to enter summary judgment in its favor. Though Insurer raises several challenges to the summary judgment rulings, all flow from the court's determination that Insurer waived its Coverage Defense. We, too, find the Coverage Defense waived as a matter of law and therefore affirm.

## I. Standard of Review

[13] Waiver of an insurance policy provision generally is a question of fact, but summary judgment is proper if there are no disputed facts as to whether waiver occurred. *Am. Standard Ins. Co. of Wis. v. Rogers*, 788 N.E.2d 873, 877 (Ind. Ct.

App. 2003). When reviewing summary judgment rulings, we apply the same standard as the trial court. *Fox v. Barker*, 170 N.E.3d 662, 665 (Ind. Ct. App. 2021). Summary judgment is appropriate only if "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

The moving party (Wildwood) bears the initial burden of showing its entitlement to partial summary judgment. *See Fox*, 170 N.E.3d at 665. Partial summary judgment is improper if the moving party fails to meet this burden or if the nonmoving party (Insurer) rebuts it by establishing a genuine issue of material fact. *See id.* In conducting our analysis, we construe all factual inferences in the nonmoving party's favor and all doubts as to the existence of a material issue against the moving party. *Id.*

## II. Applicable Law

"Where a policy provides for notice and proof of loss within a stated period, the insured must comply with that provision as a condition precedent to recovery under the policy." *Ebert v. Grain Dealers Mut. Ins.,* 158 Ind. App. 379, 303 N.E.2d 693, 700 (1973). But the insured may show the insurer's waiver of that condition. *Id.* As this Court observed long ago:

> [W]here an insurance company by its course of dealings with the insured and others known to the insured has induced a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to

> set up such forfeiture as against one in whom their conduct has induced such belief.

*West v. Nat'l Cas. Co.*, 61 Ind. App. 479, 112 N.E. 115, 119 (1916). Put differently, an insurer's conduct that is inconsistent with an intention to rely on the policy requirements and would lead the insured to believe that those requirements will not be enforced is sufficient to constitute waiver and bar forfeiture of coverage. *See Ebert*, 303 N.E.2d at 700 (finding that insurer's continued invitation to submit more proof in support of claim raised a reasonable inference of insurer's waiver of policy's 60-day proof of loss requirement). Both waiver and estoppel may apply to nearly any ground on which an insurer may deny liability. *Gallant Ins. v. Wilkerson,* 720 N.E.2d 1223, 1227 (Ind. Ct. App. 1999).

[16] Our Supreme Court has ruled that "[r]equirements of written notice and verified proofs of loss are . . . easily waived." *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 363 N.E.2d 985, 991 (1977); *see also Ebert*, 303 N.E.2d at 700 (ruling that a requirement of a proof of loss form is a condition precedent to an insured's recovery under a policy, but one that may be waived by the insurer). "Where the insurer or its agents have formed a relationship with the insured or acted towards him in such a way as to cause the insured to reasonably believe written notice and formal proofs of loss will not be required, the insurer will not be permitted to raise such matters as a defense." *Huff*, 363 N.E.2d at 992. Such a "waiver may be implied from the acts, omissions, or conduct of one of the parties to the contract." *Westfield National Ins. Co. v. Nakoa,* 963 N.E.2d 1126,

1132 (Ind. Ct. App. 2012). And "[s]light acts and circumstances may be sufficient for these purposes." *Huff*, 363 N.E.2d at 992.

## III. Insurer's Waiver

[17] Here, the designated evidence shows no genuine issue of material fact as to whether Insurer waived the Sworn Statement in Proof of Loss requirement through its conduct over the two-year period before it raised the Coverage Defense.

[18] Viewed most favorably to Insurer, the undisputed designated evidence shows that Insurer's pattern of conduct was inconsistent with an intent to enforce the Sworn Statement in Proof of Loss requirement. Shortly after receiving and responding to Wildwood's Property Loss Notice on June 3, 2020, Insurer immediately retained Insurer's Adjuster. He reviewed Wildwood's buildings nine days after Insurer's receipt of the Property Loss Notice and issued a report the same day as his inspection. Thus, 1½ months before the Sworn Statement in Proof of Loss was due, Insurer already had determined for itself the extent of the damage to Wildwood's buildings caused by the storm.

[19] Based on the report by Insurer's Adjuster, Insurer concluded that certain parts of the damage outlined in Wildwood's Property Loss Notice were covered by the policy. Insurer issued a check for that damage, although the check was accompanied by a letter dated June 23, 2020, that stated the check "is not a SWORN STATEMENT IN PROOF OF LOSS as required by the policy" and that "[a] PROOF OF LOSS must still be submitted to the company within 60

days of the date of loss stated above." App. Vol. V, p. 69. The "date of loss" noted in the June 23rd letter was April 7, 2020. *Id.* Thus, the 60-day period for submitting the "PROOF OF LOSS" had already expired prior to creation of the June 23rd letter. The June 23rd letter further reserved "[a]ll . . . conditions . . . in the policy" and stated that "[n]o action by [Insured's agents] shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy." Id.

[20] This payment also conflicted with the information in Insurer's earlier June 3rd letter. Besides reserving the right to find no coverage, Insured's June 3rd letter specified that "[a] decision on your claim can only be made once the claim has been submitted and supported by proper documentation." *Id.* at 52. This statement in the June 3rd letter was consistent with the policy's provision that Insurer would inform Wildwood "within 30 days after [Insurer] receive[s] the sworn statement of loss" as to its intent to pay the value of the damaged property, pay the cost of repair or replacement, or other alternatives specified in the policy. App. Vol. III, pp. 105-6. Yet within 20 days of its first notice of Wildwood's loss on June 3, 2020, Insurer's Adjuster had inspected Wildwood's property, Insurer had at least preliminarily determined the extent of the loss, and Insurer had paid for part of Wildwood's claimed loss. In other words, Insurer paid for some of the storm damage covered by the policy more than a month before the Sworn Statement in Proof of Loss was even due,

notwithstanding language in the policy and the June 3rd letter indicating the Sworn Statement in Proof of Loss was required first.[1]

[21]   Insurer's actions were inconsistent with strict enforcement of its policy provisions, despite Insurer's statement in its June 23rd letter stating that partial payment of the claim was not a waiver of any policy conditions. App. Vol. IV, p. 69. By paying part of the claim before Wildwood's submission of the Sworn Statement in Proof of Loss, Insurer essentially contradicted the policy provision providing for payment of the claim only after Wildwood's submission of this document.

[22]   And such contradictions persisted. After this first payment, Insurer continued to investigate Wildwood's claim and repeatedly corresponded with Wildwood, despite the lack of a Sworn Statement in Proof of Loss. For instance, Insurer's Adjuster reinspected the property in late July 2020—again before the "signed, sworn statement of loss" was due—and reaffirmed his original view that the shingle damage was not due to the April 7th hailstorm. App. Vol. III, p. 105.

---

[1] Insurer's June 3rd and June 23rd letters are curious for several reasons. The June 3rd letter uses different terms than the policy. The policy refers to a "signed, sworn statement of loss." App. Vol. IV, p. 217. The letter refers to a "SWORN STATEMENT IN PROOF OF LOSS" and "[a] PROOF OF LOSS." App. Vol. V, p. 52. The June 3rd letter also seemingly refers to "Proof of Loss" as the whole of the unspecified documents that Insurer deemed necessary to establish Wildwood's loss. *Id.*

The June 23rd letter refers to the check issued by Insurer as not being a Sworn Statement in Proof of Loss, although the Sworn Statement in Proof of Loss was a document to be completed by Wildwood, not Insurer. Then the letter proceeds to require submission of a "PROOF OF LOSS" to the company within 60 days of the "date of loss," which was listed in the letter as April 7, 2020—the date of the storm. *Id.* at 69. But the June 23rd letter was issued weeks after this 60-day deadline had expired.

As the dispute continued, Insurer then hired a forensic engineer to inspect the property in October 2020, with Wildwood representatives present during the inspection. This was two months after the deadline for the Sworn Statement in Proof of Loss had expired.

[23] Insurer's Engineer prepared a report that concluded the shingles were not damaged by hail from the April 7th storm in mid-October 2020. He submitted a supplemental report in May 2021 after Wildwood suggested possible additional damages. This led to Wildwood hiring its own independent adjuster in June 2021. In November 2021, representatives of Insurer and of Wildwood together reinspected the condominium complex and agreed on additional damage to the building but not on shingle damage. Insurer paid nearly $20,000 for non-shingle hail damages in late November 2021 and about $6,400 to remove and replace a small portion of the shingles in January 2022—again, without submission of the Sworn Statement in Proof of Loss.

[24] The dispute between Insurer and Wildwood had crystallized at this point. They disagreed as to whether hail damaged the remaining shingles and as to whether full roof replacement or localized repairs were required. Although the parties disputed whether the shingles were damaged by the April 7th storm or an earlier storm or something else, the record contains no evidence that Insured ever suspected Wildwood's claims were fraudulent or that Insurer lacked information as to Wildwood's estimation of the damages. In fact, the parties agreed that the April 7th storm had damaged various other parts of the

buildings. The only significant dispute was over the extent of the shingle damage and the quantity of shingles to be replaced.

[25] Then, after both parties had invested nearly two years of effort into ascertaining and negotiating the scope of Wildwood's claim, Insurer first notified Wildwood—through Insured's answer to Wildwood's complaint—that Insurer was denying coverage due to the lack of a Sworn Statement in Proof of Loss. According to Insurer, Wildwood had waived coverage under the policy two years earlier by failing to submit the Sworn Statement in Proof of Loss on or before August 2, 2020.

## A. Purpose and Fraud

[26] As Insurer notes, the "purpose of a proof of loss is, much the same as with the Notice of Loss, to advise the insurer of facts surrounding the loss for which claim is being made and to afford the insurer an adequate opportunity to investigate, to prevent fraud and imposition upon it, and to form an intelligent estimate of its rights and liabilities before it is obliged to pay." Appellant's Br., pp. 25-26 (quoting 13 Lee R. Russ & Thomas F. Segalla, *Couch on Ins.* § 186:22 (3d ed. 2011)).

[27] The Property Loss Notice that Wildwood electronically submitted to Insured when it first reported the storm damage conveyed most of the information that the Sworn Statement in Proof of Loss required. The material information that was missing was the itemized damages and the sworn statement. On September

9, 2021, Wildwood's Adjuster provided documents detailing the hail damage, requested repairs, and repair cost estimates, as well as photographs of the roof purportedly documenting the hail damage. With the provision of that document, only the sworn statement remained missing.

[28] Insurer notes that it did not receive the detailed estimates from Wildwood's appraiser until more than a year after the loss. But Insurer received detailed documentation of Wildwood's claimed damages, including its initial repair estimates, when Wildwood submitted its initial Notice of Loss. Moreover, Insurer itself determined the extent of the damages just days after learning of Wildwood's claim and asserts no specific prejudice from any immediate access to similar information from Wildwood.

[29] The Sworn Statement in Proof of Loss presumably was intended to deter insurance fraud and to ensure that Insurer was notified of the extent of Wildwood's claim. This purpose appears served here because none of the designated evidence suggests that Insurer ever suspected fraudulent conduct by Wildwood, particularly given that the parties' dispute over damages arose from a similar dispute between their respective independent adjusters.

[30] The dispute from the start was whether Insurer was liable under the policy for all or part of the shingle replacement. Notwithstanding repeated, albeit confusing, language in its correspondence emphasizing the need for a Sworn Statement in Proof of Loss, Insurer made clear to Wildwood that it had

coverage—perhaps not to the extent of Wildwood's entire claim for damages but coverage all the same. Moreover, none of the designated evidence shows that Insurer's investigation or pre-suit determination of Wildwood's claim suffered due to the lack of a Sworn Statement in Proof of Loss.

## B. Wildwood's Prejudice

[31] Insurer could have claimed the policy terms allowed it to reject coverage as soon as the August 2, 2020, deadline for the Sworn Statement in Proof of Loss expired. Instead, Insurer invested time and money into further investigation and partial payment of Wildwood's claim. If, in fact, Insurer had claimed a right to deny coverage based on the missing document, Wildwood would not have needed to expend time and funds on negotiations and perhaps would have avoided the hiring of its private adjuster.

[32] Thus, Wildwood detrimentally relied on Insurer's conduct in waiving the policy requirement of a Sworn Statement in Proof of Loss. *See Johnson v. Payne*, 549 N.E.2d 48, 53 (Ind. Ct. App. 1990) ("Indiana law provides that prejudice to the insured by the insurer's failure to deny coverage is necessary to prove estoppel or implied waiver.")

## Conclusion

[33] Insurer's conduct over the two years before Wildwood sued was inconsistent with an intention to rely on the policy requirements—that is, the timely submission of a signed, sworn statement of loss. Insurer's conduct led

Wildwood to believe that Insurer disputed the scope of the claim—not that Insurer disputed whether any coverage was available.

[34] Insurer's conduct sent the clear message to Wildwood that Insurer was not enforcing requirements of the policy. Insurer actively pursued resolution of Wildwood's claim with no hint that coverage under the policy ultimately would be denied completely. Insurer's correspondence furthering negotiations and suggesting coverage, as well as its actions which sent the same message, made clear that it was waiving the policy requirement of a timely sworn statement of loss.

[35] Wildwood was therefore entitled to partial summary judgment. And because Insurer's waiver negated the Coverage Defense on which it sought summary judgment, Insurer was not entitled to judgment as a matter of law.

[36] Affirmed.

Vaidik, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

David L. Taylor
Jerry M. Padgett
Taylor DeVore & Padgett, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE

Kevin E. Steele
Burke Costanza & Carberry LLP
Valparaiso, Indiana

Edward Eshoo, Jr.
Merlin Law Group
Chicago, Illinois